STEVEN HULTQUIST and DEBRA HULTQUIST, Plaintiffs v. DR. LESLIE MORROW,
DR. MICHAEL LISH and DAVID DANIEL CONSTRUCTION COMPANY, Defendants

No. COA04-561

(Filed 5 April 2005)

**1. Real Property— restrictive covenant—placement of septic system**

The trial court did not err by construing a restrictive covenant in favor of defendants and granting summary judgment for them in an action between lot owners involving the placement of an above-ground septic system. Both the covenant and the septic system permit were filed prior to plaintiffs' closing the sale of their lot. While the language of the covenant was ambiguous, the circumstances and timing of the submission of the septic system application and the filing of the covenants suggests that the covenant was written with the intent to prevent lot owners from constructing residences within 400 feet of either existing or applied-for locations of septic systems.

**2. Appeal and Error— argument not raised at trial—not considered on appeal**

An argument concerning the grounds for considering an affidavit in a summary judgment hearing was not addressed on appeal where plaintiffs objected at the hearing on different grounds. A contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court.

**3. Civil Procedure— summary judgment—consideration of allegedly inadmissible affidavit—other evidence—no error**

There was no error in the consideration of an affidavit at a summary judgment hearing where the affidavit may have constituted parol evidence. There is no indication that the court based its ruling solely on the affidavit and the court's decision is supported by competent evidence in the record.

Appeal by plaintiffs from order entered 2 February 2004 by Judge Ronald L. Stephens in Chatham County Superior Court. Heard in the Court of Appeals 26 January 2005.

*Intellectual Property/Techology Law, by Steven J. Hultquist, for plaintiffs-appellants.*

*Bradshaw & Robinson, L.L.P., by Nicolas P. Robinson, for defendants-appellees.*

TIMMONS-GOODSON, Judge.

Steven Hultquist and Debra Hultquist (collectively, "plaintiffs") appeal the entry of summary judgment in a declaratory judgment action construing a restrictive covenant. For the reasons discussed herein, we affirm the trial court order.

The facts and procedural history pertinent to the instant appeal are as follows: In 1998, plaintiffs became interested in purchasing a lot located in the Willowbend Plantation Subdivision ("Willowbend") in Chatham County. Due to the quality of the soil of the lots in Willowbend, above-ground septic disposal systems were required for each lot. According to Patrick A. O'Neal ("O'Neal"), president of the subdivision's developer, Chatham Development Corporation ("Chatham Development"), Chatham Development was required to apply for an above-ground septic disposal system permit for each lot prior to the sale of that lot. On 25 April 1998, plaintiffs paid Chatham Development $1,000.00 in order to obtain the fourth right of selection when the lots were sold. As part of their deposit, plaintiffs executed a Reservation Deposit form, in which plaintiffs indicated that they were "aware that each parcel will be pre-approved for septic by Chatham County Health Department or The State of North Carolina DEHNR."

In July 1998, plaintiffs selected lot 9 of Willowbend in the lottery sale conducted by Chatham Development. Chatham Development sited potential locations for each lot's above-ground septic disposal system, and, on 12 August 1998, Chatham Development filed applications with the North Carolina Department of Environment and Natural Resources, Division of Water Quality ("NCDENR/DWQ"), seeking approval of the proposed construction, location, and operation of an above-ground septic disposal system on plaintiffs' lot as well as on an adjacent lot, lot 8. At that time, lot 8 was still owned by Chatham Development.

On 26 August 1998, Chatham Development filed a restrictive covenant ("Willowbend Covenant") concerning the property contained within Willowbend. On 29 September 1998, plaintiffs closed

the sale of lot 9. On 31 December 1998, NCDENR/DWQ issued Chatham Development permit No. WQ0015717 for lot 8, and permit No. WQ0015718 for lot 9. The permits authorized the construction and operation of an above-ground septic system in the areas sought in the respective applications, and the permits stated that they were effective until 31 December 2003. Plaintiffs began construction of a residence on lot 9 in 2001, and they completed the construction in January 2002.

In early 2003, Dr. Michael Lish ("Lish") and Dr. Leslie Morrow ("Morrow") acquired lot 8 from Richard Cronheim ("Cronheim"), who had previously purchased lot 8 from Chatham Development. Lot 8 was empty when Lish and Morrow acquired it. On 15 April 2003, NCDENR/DWQ reissued permit No. WQ0015717 to Lish, the only modification being a change in the name of the individual to whom the permit was issued. The permit remained effective until 31 December 2003.

Lish and Morrow subsequently hired David Daniel Construction Company ("Daniel Construction") to serve as general contractor for the construction of a residence on lot 8. Shortly after construction began, plaintiffs, through the Architectural Review Committee of the Willowbend Homeowners Association, requested that Lish and Morrow reposition the proposed location of the above-ground septic disposal system on lot 8. According to the record, Lish and Morrow's above-ground septic system was to be installed approximately fifty feet from the common boundary line of lots 8 and 9, and approximately 148 feet from the corner of plaintiffs' residence. Plaintiffs contended that the placement of the septic system in the proposed location violated the Willowbend Covenant, which, plaintiffs further contended, prohibited the installation of septic systems within 400 feet of residences.

Lish and Morrow refused to reposition the proposed location of the septic system, and, on 10 November 2003, plaintiffs sought a declaratory judgment against Lish, Morrow, and Daniel Construction (collectively, "defendants"). In their declaratory judgment complaint, plaintiffs requested that the trial court prohibit defendants from placing the septic system within 400 feet of plaintiffs' residence. On 12 November 2003, plaintiffs filed a motion for preliminary injunction, and on 21 November 2003, defendants filed a motion for summary judgment, requesting that the trial court award judgment in their favor as a matter of law.

On 1 December 2003, defendants filed an answer to plaintiffs' declaratory judgment complaint. The trial court held a hearing on the matter, following which plaintiffs orally moved for summary judgment in their favor. On 2 February 2004, the trial court granted defendants' motion for summary judgment and denied plaintiffs' motion for a permanent injunction, thereby allowing defendants to install the septic system in the proposed location. Plaintiffs appeal.

[1] The issue on appeal is whether the trial court erred by construing the Willowbend Covenant in favor of defendants.

"Summary judgment is appropriate in a declaratory judgment action where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *Early v. Bowen*, 116 N.C. App. 206, 208, 447 S.E.2d 167, 169 (1994). In the instant case, the trial court was asked only to determine as a matter of law whether the Willowbend Covenant prohibited defendants from installing the septic system in the proposed location.

Restrictive covenants are strictly construed, but they should not be construed "in an unreasonable manner or a manner that defeats the plain and obvious purpose of the covenant." *Cumberland Homes, Inc. v. Carolina Lakes Prop. Owners' Ass'n*, 158 N.C. App. 518, 521, 581 S.E.2d 94, 97 (2003). "[T]he fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions." *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967).

In the instant case, the Willowbend Covenant creates a seventy-five foot natural setback from the boundary lines of each lot, wherein no building or other structure may be placed. However, according to Article IV of the Willowbend Covenant, "[a]llowable exceptions to the natural setback area" include "activities required for the installation and maintenance of septic systems and wells." Article IV of the covenant further provides as follows:

> Lots may have aboveground septic disposal spray and drip systems. There shall be a variance in the setbacks for aboveground septic systems such that no Residential dwelling o[n] any Lot shall be located closer than 400 feet to said aboveground disposal system. Construction of any building within 400 feet of such a septic disposal system shall constitute a waiver of any rights or claims, at law or in equity, against any property owner or devel-

oper; and acceptance of any building or parcel of land in violation of said 400 foot setback shall constitute a waiver of any rights or claims, at law or in equity, against any property owner or developer.

The parties disagree as to the effect of the above-quoted language. Plaintiffs contend that the covenant prohibits defendants from installing the septic system in the proposed location, because the installation would place the septic system within 400 feet of plaintiffs' residence. Defendants contend that the covenant prohibited plaintiffs from constructing their residence within 400 feet of the proposed septic system location.

After reviewing the Willowbend Covenant, we conclude that, in drafting the convenant, Chatham Development contemplated a distance of 400 feet separating all septic systems and residences in Willowbend. However, we further conclude that the language and terms of the restrictions used by Chatham Development to achieve this separation are ambiguous. The covenant clearly provides that when a residence is constructed within 400 feet of an above-ground septic system, the owner of the residence and all future owners of the residence waive any rights or claims against the owner of the septic system. However, the covenant contains no provision addressing the respective rights and claims of owners when one lot owner installs an above-ground septic system within 400 feet of another lot owner's residence. Plaintiffs' interpretation of the covenant requires this Court to add the term "existing" to Article IV, so that the covenant provides that "no Residential dwelling o[n] any Lot shall be located closer than 400 feet to said *existing* aboveground disposal system." Under plaintiffs' interpretation, property owners waive their rights and claims only when they construct "any building within 400 feet of such a[n] *existing* septic disposal system[.]" On the other hand, defendants' interpretation of the covenant requires this Court to add the terms "permitted" and "location" to Article IV, so that the covenant provides that "no Residential dwelling o[n] any Lot shall be located closer than 400 feet to said *permitted* aboveground disposal system *location*." Under this interpretation, property owners waive their rights and claims when they construct "any building within 400 feet of such a *permitted* septic disposal system *location*[.]"

It is well established that covenants restricting the free use of property are strictly construed against limitations upon such use. *Long*, 271 N.C. at 268, 156 S.E.2d at 239. " 'Such restrictions will not be aided or extended by implication or enlarged by construction to

affect lands not specifically described, or to grant rights to persons in whose favor it is not clearly shown such restrictions are to apply.' " *Id.* (quoting 20 Am. Jur. 2d, Covenants, Conditions and Restrictions § 187 (1965)). Therefore, because we are unable to add the pertinent language to the covenant necessary to satisfy either parties' interpretation, we must examine all the provisions of the instrument creating the restriction as well as " 'the surrounding circumstances existing at the time of the creation of the restriction' " in order to determine the effect of the covenant's terms. *Long,* 271 N.C. at 268, 156 S.E.2d at 239 (quoting V. Woerner, Annotation, *Maintenance, Use, or Grant of Right of Way Over Restricted Property As Violation of Restrictive Covenant,* 25 A.L.R. 2d 904, 905 (1952)).

As discussed above, the record reflects that on 12 August 1998, Chatham Development applied for above-ground septic system permits for each lot in Willowbend. On 26 August 1998, approximately two weeks after submitting the applications, Chatham Development filed the Willowbend Covenant with the Chatham County Register of Deeds. Defendants contend that these circumstances suggest that Article IV of the covenant was written with the intent to prevent lot owners from constructing residences within 400 feet of the applied-for locations of above-ground septic systems. We agree. Although the applied-for permits for these locations were not approved by NCDENR/DWQ until 31 December 1998, both the permit applications and the covenant were filed prior to plaintiffs' closing the sale of their lot. Furthermore, we note that when signing the Reservation Deposit form, plaintiffs indicated that they were "aware that each parcel will be pre-approved for septic by Chatham County Health Department or The State of North Carolina DEHNR." Plaintiffs' assent to this statement indicates a recognition on their part that, prior to each lot-owner's selection and subsequent purchase of a lot, Chatham Development would have applied for and received a permit for a specific septic system location on each lot.[1]

We note that in interpreting restrictive covenants, doubt and ambiguity are resolved in favor of the unrestricted use of property, " 'so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which

---

1. We recognize that with respect to plaintiffs' lot, Chatham Development was unable to maintain the "receipt" portion of this assurance. However, despite Chatham Development's failure to secure a permit prior to the close of the sale of plaintiffs' lot, the assurance contained in the Reservation Deposit remains clear—prior to the date of sale, each lot in the subdivision would have been tested and would contain a proposed location for its septic system.

extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.' " *Long*, 271 N.C. at 268, 156 S.E.2d at 239 (quoting 20 Am. Jur. 2d § 187). In the instant case, we conclude that the terms of the Willowbend Covenant and its surrounding circumstances suggest that the covenant should be interpreted to prohibit construction of a residence within 400 feet of an existing above-ground septic system as well as a proposed or permitted above-ground septic system location. Therefore, we hold that the trial court did not err in construing the terms of the Willowbend Covenant, and, accordingly, we overrule plaintiffs' first argument.

[2] Plaintiffs argue in the alternative that the trial court erred by considering O'Neal's affidavit. Plaintiffs assert that O'Neal's affidavit was inadmissible because it contains non-expert opinion and conclusions regarding the ultimate issue of fact in the case. However, we note that at the summary judgment hearing, plaintiffs objected to the introduction of O'Neal's affidavit only on the grounds that the affidavit constituted parol evidence. "As has been said many times, 'the law does not permit parties to swap horses between courts in order to get a better mount,' meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court." *Wood v. Weldon*, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)); *see Creasman v. Creasman*, 152 N.C. App. 119, 123, 566 S.E.2d 725, 728 (2002). Therefore, we decline to address the merits of this assertion.

[3] We note that on appeal, plaintiffs nevertheless reassert their contention that O'Neal's affidavit was inadmissible because it constitutes parol evidence. In general, " '[t]he parol evidence rule excludes prior or contemporaneous oral agreements which are inconsistent with a written contract if the written contract contains the complete agreement of the parties.' " *Opsahl v. Pinehurst Inc.*, 81 N.C. App. 56, 65, 344 S.E.2d 68, 74 (1986) (quoting *Cable TV, Inc. v. Theatre Supply Co.*, 62 N.C. App. 61, 64-65, 302 S.E.2d 458, 460 (1983)). In the context of restrictive covenants, our Supreme Court has stated that

[o]rdinarily [the covenanting parties' intent] must be ascertained from the deed itself, but when the language used is ambiguous it is proper to consider the situation of the parties and the circumstances surrounding their transaction. However, this intention may not be established by parol. Neither the testimony nor the declarations of a party is competent to prove intent.

*Stegall v. Housing Authority,* 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971); *see Runyon v. Paley,* 331 N.C. 293, 313, 416 S.E.2d 177, 191 (1992) ("[D]eclarations and testimony of the parties are not admissible to prove the covenanting parties' intent.").

In the instant case, O'Neal's affidavit was included in the memoranda and documents submitted to the trial court by defendants, and it contains statements regarding Chatham Development's intent in drafting the Willowbend Covenant. Although neither O'Neal nor Chatham Development are parties to the litigation, O'Neal's affidavit was introduced by defendants in an effort to establish their rights under the covenant. The affidavit contains statements regarding intent that tend to add to and vary the terms of the covenant. However, we note that "[w]hen parties waive a jury trial 'the rules of evidence as to admission and exclusion are not so strictly enforced as in a jury trial. . . . "[I]t is presumed that incompetent evidence was disregarded by the Court in making up its decision." ' " *Insurance Co. v. Shaffer,* 250 N.C. 45, 53, 108 S.E.2d 49, 54-55 (1959) (quoting *Bizzell v. Bizzell,* 247 N.C. 590, 604-05, 101 S.E.2d 668, 678 (1958) (citations omitted)). In the instant case, there is no indication that the trial court based its ruling solely upon O'Neal's affidavit, and, notwithstanding the statements of O'Neal's affidavit, the trial court's decision is supported by competent evidence in the record regarding the covenant and its surrounding circumstances. Accordingly, we overrule plaintiffs' final argument.

In light of the foregoing conclusions, we hold that the trial court did not err in granting summary judgment in favor of defendants. Thus, the trial court order is affirmed.

Affirmed.

Judges HUDSON and STEELMAN concur.