WINDING RIDGE HOMEOWNERS ASSOCIATION, INC., A North Carolina not-for-profit Corporation, and THEODORE J. HUMPHREY, III, a natural person, Plaintiffs v. ZALMAN JOFFE and wife, DEVORA JOFFE, SUNTRUST MORTGAGE, INC., JACKIE MILLER, Trustee, ALSTON MASON, TYLER MURTAUGH, TRIP SHORT, BROOKS WELLER, and TAYLOR HARRINGTON, Defendants

No. COA06-1506

(Filed 17 July 2007)

**1. Deeds— restrictive covenant—structural and usage restriction**

A restrictive covenant requiring that lots in a subdivision "shall be used for single family residential structures," when considered with captions for relevant sections of the covenant as "Use Restrictions" and "Use of Property," constituted both a structural and usage restriction.

**2. Deeds— restrictive covenant—single family residence— students**

The trial court correctly found that college students living in a single family residence were not an integrated family unit where defendants failed to allege or produce evidence that the students considered themselves to be a family or that they operated their home in any manner other than convenience. Thus, a lease of the residence to the students violated a subdivision restrictive covenant limiting use of the property to a single family dwelling.

Judge GEER dissenting.

Appeal by defendants from order entered 18 August 2006 by Judge Carl R. Fox in Orange County Superior Court. Heard in the Court of Appeals 6 June 2007.

*Brown & Bunch, PLLC, by Charles Gordon Brown, for plaintiff-appellees.*

*The Brough Law Firm, by G. Nicholas Herman, for defendant-appellants.*

JACKSON, Judge.

On 19 April 2006, the Winding Ridge Homeowners Association, Inc., and Theodore Humphrey, III ("plaintiffs") filed an action against

defendants Zalman and Devora Joffe ("Joffes"), owners of Lot 1 and a residence located at 106 Mullin Court, Chapel Hill, North Carolina, in the Winding Ridge Subdivision. The action also included as defendants: SunTrust Mortgage, Inc., who holds an interest in defendants' property; Jackie Miller, who holds security title to defendants' property under a deed of trust; and Alston Mason, Tyler Muraugh, Trip Short, Brooks Weller, and Taylor Harrington, who were college students residing at defendants' property as tenants or sub-tenants at the time of the action. Plaintiffs alleged that defendants' leasing of their residence to the tenants violated the subdivision's restrictive covenants. Specifically, plaintiffs alleged that defendants were in violation of Article VIII, Section 3(b) of the restrictive covenants, which provides that the lots in the subdivision "shall be used for single family residential structures." Plaintiffs sought an injunction to enforce the restrictive covenants, and to prohibit defendants from allowing the property to be occupied other than by a single family. On 9 May 2006 and 20 June 2006, respectively, Joffe and the students answered the complaint, admitting most of its factual allegations but denying that the students' use of the residence violated the restrictive covenant.

Neither party disputes the fact that the restrictive covenant at issue is binding upon the Joffes' property and use of the property. The restrictive covenant at issue, originally recorded in 1987, contains a provision found in Article VIII, titled "Use Restrictions." The covenant provides:

Section 3. Use of Property.

(a) Only one *single family dwelling* or replacement thereof shall be placed upon each lot as designated on the said plat and no such lot shall be further subdivided by future owners for the purpose of accommodating additional buildings . . . .

(b) *This property shall be used for single family residential structures* and no duplex houses, apartments, trailers, tents or commercial or industrial buildings shall be erected or permitted to remain on the property provided, however, that this restriction shall not preclude the inclusion of one small light housekeeping apartment within the residential structure for occupancy by not more than two persons.

(c) No *single family dwelling* shall be built, erected, altered or used unless the main body of the structure, exclusive of garages,

porches, breezeways, stoops and terraces, shall contain at least 1650 square feet of finished and heated floor space in the main body of the house if the structure is a one-story building or at least 2,000 square feet for all other structures. . . .

(Emphases added). On 23 January 2004, Joffe's wholly-owned construction company, Ridge Construction, Inc. (Ridge Construction), acquired the subject lot in the Winding Ridge Subdivision. On 30 December 2003, Ridge Construction obtained a zoning compliance permit from the Town of Chapel Hill to develop the lot with a "single family residence." On 13 January 2004, a building permit was issued, and on 7 June 2004, the Town issued a Certificate of Occupancy for the residence. Ridge Construction then conveyed the lot and residence to the Joffes on 10 June 2004.

At some point after the conveyance of the property, Joffe leased the residence to four students who were unrelated to one another. Based upon the affidavit of one of the students, they had been "living together in the residence as a single housekeeping unit and as a single place for culinary purposes." In addition their "house [was] operated in a home-like manner. The roommates share[d] in common household chores, car pool[ed] to campus when possible, cook[ed] meals and [ate] together, car pool[ed] to eat out together, and gather[ed] for relaxation and to watch television, talk and entertain together."

On 16 June 2006, plaintiffs filed a Motion for Partial Summary Judgment and Permanent Injunction, seeking an injunction against defendants' continued violation of Article VIII, Section 3 of the subdivision's restrictive covenants. The Joffes filed a Motion for Partial Summary Judgment on 21 June 2006, arguing that the restrictive covenant at issue limits only the use of the lots to "single family residential structures" and does not limit the use of lots within the subdivision to single family occupancy. On 18 August 2006 the trial court entered an order granting plaintiffs' motion for partial summary judgment and permanent injunction. The trial court held that:

5. Article VIII of the Covenants, reasonably construed, unambiguously restricts the use of Lot 1 to single family residential use.

6. Based upon a reasonable construction of Article VIII in context with the rest of the Covenants, use of Lot 1 is restricted to single family residential.

7. The plain and obvious purpose of Article family residential use. The multiple references to "single family dwelling or replacement," "single family residential structures" and "single family dwelling" in combination with the captions "Use Restrictions" and "Use of Property" restricts the utilization of Lot 1 to single family occupancy. This finding is also supported by the prohibition of duplex houses and apartments and the negative inference derived from the narrow exception for a "light housekeeping apartment within the residential structure for occupancy by not more than two persons."

8. Giving each part of the Covenants effect according to the natural meanings of the words, including all reasonable inferences therefrom applied in such a way as to avoid defeating the plain and obvious purposes of the restriction, the Covenants were intended to restrict Lot 1 to single family residential use.

9. The Joffes had actual and constructive notice of this use restriction when they purchased Lot 1.

10. The five student occupants are not related by blood, marriage or lawful adoption.

11. The five student occupants are not substantively structured as an integrated family unit.

12. The five student occupants are housemates who, in the course of attending college, share the cost of having a place to live as well as, on occasion, meals and fellowship. However, they are not substantively structured like a family or an integrated family unit.

13. The occupancy of Lot 1 by these students is a use of Lot 1 other than for single family residential purposes.

14. The Joffes, by permitting these students to occupy Lot 1, have violated the Covenants.

The Joffes also were "enjoined and restrained from using or making Lot 1 available for occupancy to any group of two or more persons not related by blood, marriage, lawful adoption, or who are not substantively structured like an integrated family unit." The Joffes have appealed from this order.

On appeal, defendants present two issues for our review: (1) whether the trial court erred in concluding that the restrictive covenant prescribing that lots "shall be used for single family residential structures" is an occupancy restriction rather than a structural restriction; and (2) if we are to hold that the restrictive covenant at issue is an occupancy restriction rather than a structural restriction, then whether the trial court erred in concluding that the students who occupied the premises were not substantively structured like an integrated family unit, and thus defendants' use of the property violated the covenant. Defendants contend that the restrictive covenant at issue constitutes a structural restriction, whereas plaintiffs argue that the covenant, when construed with the Article and Section titles, constitutes an occupancy restriction, and thus limits the usage of the property to usage by a "single family."

On appeal, our standard of review for an order granting summary judgment is *de novo. Stafford v. County of Bladen,* 163 N.C. App. 149, 151, 592 S.E.2d 711, 713 (2004), *appeal dismissed,* 358 N.C. 545, 599 S.E.2d 409 (2004). Summary judgment is only appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Leake v. Sunbelt, Ltd. of Raleigh,* 93 N.C. App. 199, 201, 377 S.E.2d 285, 287 (1989). "[I]n considering summary judgment motions, we review the record in the light most favorable to the nonmovant." *Id.* "The entry of summary judgment presupposes that there are no issues of material fact." *Cieszko v. Clark,* 92 N.C. App. 290, 292-93, 374 S.E.2d 456, 458 (1988). Thus, "[f]indings of fact and conclusions of law are not necessary in an order determining a motion for summary judgment," and, "such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment." *Bland v. Branch Banking & Tr. Co.,* 143 N.C. App. 282, 285, 547 S.E.2d 62, 64-65 (2001).

"Restrictive covenants are strictly construed, but they should not be construed 'in an unreasonable manner or a manner that defeats the plain and obvious purpose of the covenant.'" *Hultquist v. Morrow,* 169 N.C. App. 579, 582, 610 S.E.2d 288, 291 (quoting *Cumberland Homes, Inc. v. Carolina Lakes Prop. Owners' Ass'n,* 158 N.C. App. 518, 521, 581 S.E.2d 94, 97 (2003)), *disc. rev. denied,* 359 N.C. 631, 616 S.E.2d 235 (2005). " 'The fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions.'" *Id.* (quoting

*Long v. Branham,* 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967)) (emphasis in original). Covenants that restrict the free use of property are to be strictly construed against limitations upon such use. *Long,* 271 N.C. at 268, 156 S.E.2d at 239.

> [I]n interpreting restrictive covenants, doubt and ambiguity are resolved in favor of the unrestricted use of property, " 'so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.' "

*Hultquist,* 169 N.C. App. at 584-85, 610 S.E.2d at 292 (quoting *Long,* 271 N.C. at 268, 156 S.E.2d at 239). "[E]ach part of the covenant must be given effect according to the natural meaning of the words, provided that the meanings of the relevant terms have not been modified by the parties to the undertaking." *Hobby & Son v. Family Homes,* 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981).

**[1]** Defendants contend that our Supreme Court's holding in *Hobby & Son v. Family Homes,* 302 N.C. 64, 274 S.E.2d 174, controls the instant case. In *Hobby,* the plaintiff subdivision residents sought to enforce the subdivision's restrictive covenants against a nonprofit corporation which operated a family care home in a dwelling located in the subdivision. The family care home housed mentally retarded adults, along with adult caretakers who also lived in the residence. In *Hobby,* the restrictive covenant at issue read as follows:

> No lot shall be used except for residential purposes, but nothing herein shall be construed to mean that a lot may not be converted to a street regardless of the type of use made of such street. No building shall be erected, altered, placed, or permitted to remain on any building unit other than one detached single-family dwelling not to exceed 2 1/2 stories in height, a private garage for not more than three cars and outbuildings incidental to residential use.

*Id.* at 65-66, 274 S.E.2d at 176. In interpreting this restrictive covenant and applying it to the defendants' proposed usage of the property, the Court held that the defendants' use of the property was for residential purposes. *Id.* at 74, 274 S.E.2d at 181. The Court then went on to determine whether the restrictive covenant's limitation as to the type of structure that may be placed on a piece of property—one detached single-family dwelling—also limited the type of usage to which the

building would be subject. The Court held that "[w]hile it is possible that a restriction as to the type of structure would, in some instances, limit the character of the type of usage to which the building is employed, we conclude that such is not necessarily the case." *Id.* "[E]ach part of a contract which contains a restrictive covenant must be interpreted in such a manner that each portion of the covenant is given effect if that can be done by fair and reasonable intendment." *Id.* at 74-75, 274 S.E.2d at 181. The Court held that although the restrictive covenant in *Hobby* contained a restriction limiting use of the property to "residential purposes," this restriction alone could not be construed in conjunction with the statement referencing a "single-family dwelling" to impose a usage restriction in terms of who may occupy the property. *Id.* The Court held that with respect to the subject covenant,

> [a]n interpretation of the phrases which relate to a single-family dwelling as being a usage restriction would be to render them mere surplusage because nothing they contain adds anything to the concept of "residential purposes" in a clear and distinct way. All of the components of the particular clause may be interpreted according to their ordinary and accepted meanings as relating to structural matters. By delineating the number of stories which the building may contain, and the number of cars which its garage may accommodate, as well as nature of the outbuildings which may be erected on the lot, it would seem that the framers of the covenant were seeking to impose a structural requirement upon owners of the tract. Nothing in the record indicates that defendant has altered the structure which had been erected . . . in any manner . . . .

> We hold, therefore that a provision in a restrictive covenant as to the character of the structure which may be located upon a lot does not by itself constitute a restriction of the premises to a particular use. While a restrictive covenant may be so clearly and unambiguously drafted that it regulates the utilization of property through a structural limitation, such was not done in the present case.

*Id.* at 75, 274 S.E.2d at 181-82 (citation omitted). However, based upon the clear wording of the restrictive covenant at issue in the instant case, we hold the restrictive covenant here is not analogous to that in *Hobby*, and instead is more similar to that in *Higgins v. Builders & Finance, Inc.*, 20 N.C. App. 1, 10, 200 S.E.2d 397 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974).

In *Higgins*, this Court held that the language of a restrictive covenant, which provided that "[n]o structure shall be erected, altered, placed or permitted to remain on any lot other than *for use as a single family residential dwelling*," was both a structural and usage restriction. *Id.* at 10, 200 S.E.2d at 404 (emphasis added). In comparison, the covenant in *Hobby* limited the use of the property only to "residential purposes." The portion of the covenant regarding the "single-family dwelling" did not contain a provision that the property be "used" for a "single-family dwelling," as is the case in *Higgins* and in the instant case. *See Hobby*, 302 N.C. at 65-66, 274 S.E.2d at 176-77; *compare Higgins*, 20 N.C. App. at 9, 200 S.E.2d at 403. Moreover, the portion of the covenant in *Hobby* that limited the use to "residential purposes" was in a completely separate and distinct sentence from the restriction regarding a "single family dwelling." Whereas in *Higgins*, the restrictive covenant at issue placed the term "use" within the same sentence as the requirement that there could only be a "single family residential dwelling." As we held in *Higgins*, a restrictive covenant, when drafted in this manner, constitutes both a structural and a usage restriction. *Higgins*, 20 N.C. App. at 10, 200 S.E.2d at 404. The dissent's drawing of a distinction between the terms "single family residential structure" and "single family residential dwelling" does not alter the fact that the structural restriction is found in a clause that also limits the structure or dwelling's usage.

In the instant case, the captions for the relevant Article and section of the covenants are "Use Restrictions" and "Use of Property," respectively. Unlike in *Hobby*, these captions, when construed with the specific language of the covenant "regulate[] the utilization of property through a structural limitation." *Hobby*, 302 N.C. at 75, 274 S.E.2d at 182. The restrictive covenant at issue is substantially similar to that in *Higgins*, and thus, we hold the restrictive covenant in the instant case constitutes both a structural and usage restriction, and the Joffes in fact were in violation of the restrictive covenant if the college students did not constitute a single family.

[2] Next we must determine whether the trial court was correct in holding that since the college students leasing the property from the Joffes were not substantively structured as an integrated family unit, the restrictive covenant was violated. In the instant case, the restrictive covenant at issue fails to define the term "single family" or any of the words comprising that term. Moreover, the additional restrictive covenants applicable to the subject property do not define "single family" or "family," nor do they offer any insight as to how the terms

are to be interpreted or as to what were the intentions of the original drafters. *See Long*, 271 N.C. at 268, 156 S.E.2d at 238.

This Court has held that "[i]n interpreting ambiguous terms in restrictive covenants, the intentions of the parties at the time the covenants were executed 'ordinarily control,' and evidence of the situation of the parties and the circumstances surrounding the transaction is admissible to determine intent." *Angel v. Truitt*, 108 N.C. App. 679, 681, 424 S.E.2d 660, 662 (1993) (quoting *Stegall v. Housing Auth.*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971)). In the absence of any evidence of intent regarding the meaning of "single family," courts must interpret the term consistent with its "natural meaning." *Hobby*, 302 N.C. at 71, 274 S.E.2d at 179. As noted *supra*, our courts previously have suggested that the term "family" should be construed to exclude "independent persons who share only the place where they sleep and take their meals" and are not an "integrated unit." *Id.* at 73, 274 S.E.2d at 180; *see also Smith v. Assoc. for Retarded Citizens*, 75 N.C. App. 435, 440, 331 S.E.2d 324, 327 (1985).

In the instant case, the evidence contained in the record, including an affidavit by one of the tenants, shows that the students were close personal friends who resided together while attending school. They operated the residence "in a home-like manner" and shared the common household duties and expenses. The students shared the costs of food, and lived "together in the residence as a single housekeeping unit and as a single place for culinary purposes." There is nothing indicating that the students considered themselves to be a "family" or anything more than close personal friends. Based upon the evidence in the record, we hold the trial court.properly found that the students were not "substantively structured as an integrated family unit." Defendants failed to allege or produce evidence that the students considered themselves to be a "family" or that they operated their home in any manner other than one out of convenience. In addition, we hold the trial court's holding that "[t]he Joffes are hereby permanently enjoined and restrained from using or making Lot 1 available for occupancy to any group of two or more persons not related by blood, marriage, lawful adoption, or who are not substantively structured like an integrated family unit" is consistent with our appellate Courts' prior holdings by the Supreme Court in *Hobby* and the Court of Appeals in *Smith*.

Thus, we hold the restrictive covenant in the instant case constitutes both a structural and usage restriction, and the trial court prop-

erly found that defendants were in violation of the covenants and that the student tenants were not substantially structured as a family unit. Therefore, the trial court did not err in granting partial summary judgment to plaintiffs.

Affirmed.

Judge CALABRIA concurs.

Judge GEER dissents in a separate opinion.

GEER, Judge, dissenting.

Although I would agree as a general matter with the majority opinion's analysis of the proper meaning of the phrase "single family dwelling," *see Danaher v. Joffe*, 184 N.C. App. 642, 650, 646 S.E.2d 783, 788 (2007) (Geer, J., concurring), I would hold in this case that the restrictive covenant, as drafted, is only a limitation on the type of structure that may be placed on the property and not a restriction on the type of occupancy permitted within the dwelling. I believe that this conclusion is mandated by *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E.2d 174 (1981), and the well-established rules of construction applicable to restrictive covenants. The majority opinion has, in effect, rewritten the restrictive covenant to add a limitation not currently there. I must, therefore, respectfully dissent.

Our Supreme Court, in *Hobby*, set out the principles governing enforcement of restrictive covenants such as the one in this case:

We begin our analysis of this case with a fundamental premise of the law of real property. While the intentions of the parties to restrictive covenants ordinarily control the construction of the covenants, *such covenants are not favored by the law, and they will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of land.* The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent. Even so, we pause to recognize that *clearly and narrowly drawn restrictive covenants* may be employed in such a way that the legitimate objectives of a development scheme may be achieved.

*Id.* at 70-71, 274 S.E.2d at 179 (emphases added) (internal citations omitted). *Hobby* thus reiterated that (1) a restrictive covenant must be "clearly and narrowly" drafted, and (2) any ambiguities in a covenant will be resolved in favor of the free use of land. *Id.*

*Hobby* addressed a restrictive covenant that included two pertinent components: (1) "No lot shall be used except for residential purposes," and (2) "No building shall be erected . . . other than one detached single-family dwelling . . . ." *Id.* at 65-66, 274 S.E.2d at 176. The Supreme Court acknowledged that the first component restricted the use of the property to residential purposes, but rejected the plaintiffs' contention that the second part of the covenant also limited the use that could be made of the building after construction.

The Supreme Court explained, repeating the fundamental principles regarding restrictive covenants:

> [P]laintiffs' position is inconsistent with one of the fundamental premises of the law as it relates to restrictive covenants: Such provisions are not favored by the law and they will be construed to the end that all ambiguities will be resolved in favor of the free alienation of land. While it is possible that a restriction as to the type of structure would, in some instances, limit the character of the type of usage to which the building is employed, we conclude that such is not necessarily the case. Indeed, it is not uncommon for buildings that had once served as residences to be acquired by businesses and other concerns for renovation and subsequent utilization in new and varied ways.

*Id.* at 74, 274 S.E.2d at 181. The Court then flatly held:

> [A] provision in a restrictive covenant as to the character of the structure which may be located upon a lot does not by itself constitute a restriction of the premises to a particular use. While a restrictive covenant may be *so clearly and unambiguously drafted* that it regulates the utilization of property through a structural limitation, such was not done in the present case.

*Id.* at 75, 274 S.E.2d at 181-82 (emphasis added) (internal citation omitted).

In this case, the Article addressing "Use Restrictions" contained a section entitled "Use of Property." That section provides in pertinent part:

(a) Only one single family dwelling or replacement thereof shall be placed upon each lot as designated on the said plat and no such lot shall be further subdivided by future owners for the purpose of accommodating additional buildings . . . .

(b) This property shall be used for single family residential structures and no duplex houses, apartments, trailers, tents or commercial or industrial buildings shall be erected or permitted to remain on the property provided, however, that this restriction shall not preclude the inclusion of one small light housekeeping apartment within the residential structure for occupancy by not more than two persons.

(c) No single family dwelling shall be built, erected, altered or used unless the main body of the structure, exclusive of garages, porches, breezeways, stoops and terraces, shall contain at least 1650 square feet of finished and heated floor space in the main body of the house if the structure is a one-story building or at least 2,000 square feet for all other structures. . . .

I can perceive no meaningful distinction between this restrictive covenant and the one in *Hobby*. Indeed, subsection (c) is essentially identical to the provision in *Hobby*.

Each of these provisions describes only "the character of the structure which may be located upon a lot." *Hobby*, 302 N.C. at 75, 274 S.E.2d at 181. The subsections regulate only the type and size of the building and the number of buildings. Nowhere in these subsections is there any language specifically restricting the type of occupancy or use that may be made of the dwelling. Each of the subsections focuses exclusively on construction and other structural concepts. In short, we have only "a provision in a restrictive covenant as to the character of the structure," which *Hobby* holds "does not by itself constitute a restriction of the premises to a particular use." *Id.*

The majority, however, focuses on subsection (b)'s provision that "[t]his property shall be used for single family residential structures," suggesting that it parallels the provision upheld in *Higgins v. Builders & Fin., Inc.*, 20 N.C. App. 1, 200 S.E.2d 397 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974), a case decided before *Hobby*. In *Higgins*, however, the restrictive covenant stated: "No structure shall be erected . . . *other than for use as a single family residential dwelling* . . . ." *Id.* at 2, 200 S.E.2d at 399 (emphasis added). The two provisions are dispositively different.

The covenant in this case restricts *the use of the property* to certain types of "structures," as did the one in *Hobby*, while the *Higgins* covenant restricted *the use of the structure* to a single family dwelling. The headings used in the restrictive covenant in this case do not bring this provision within *Higgins* because they refer only to the use of the "property," a concept equally consistent with both structural and occupancy restrictions.

Moreover, if the restrictive covenant is read in the manner suggested by the majority, subsection (b) is rendered internally inconsistent. On the one hand, according to the majority, only a single family may live in the building placed on the lot, but on the other hand, subsection (b) permits a two-person housekeeping unit with no restriction on who can live in that unit. A housekeeping unit could result in the house being inhabited by two families.

In any event, in light of *Hobby* and *Higgins*, the restrictive covenant in this case is at best ambiguous. It cannot be viewed as being "clearly and unambiguously drafted," as required by *Hobby*. 302 N.C. at 75, 274 S.E.2d at 182. In the absence of the requisite clarity, the ambiguity must be resolved in favor of free use of the property. Other jurisdictions have reached the same conclusion with respect to similar restrictive covenants. *See, e.g., Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n*, 773 P.2d 1046, 1048-49 (Colo. 1989) (holding that "[t]he covenant as written restricts only the type of structure to single-family dwellings" and citing cases from other jurisdictions to same effect); *Permian Basin Ctrs. for Mental Health & Mental Retardation v. Alsobrook*, 723 S.W.2d 774, 776 (Tex. Ct. App. 1986) ("There is no mention in this [paragraph providing that only a single-family dwelling could be erected] or any other paragraph of the covenant that seeks to impose a single-family occupancy requirement."). I do not believe plaintiffs have offered any persuasive reason for reaching a different result, especially in light of *Hobby*.

In sum, I believe the law is clear, but the restrictive covenant is not. This Court may not restrict the use of the property when the restrictive covenant has failed to do so in a clear manner.