DANAHER v. JOFFE

[184 N.C. App. 642 (2007)]

JOAN C. DANAHER, ET AL., PLAINTIFFS v. ZALMAN JOFFE, ET AL., DEFENDANTS

No. COA06-659

(Filed 17 July 2007)

**Deeds— restrictive covenants—usage—single family residential purposes**

Although the trial court did not err by granting summary judgment in favor of plaintiffs on the issue that defendants were in violation of the usage restriction of a subdivision's restrictive covenants when it leased their residence to seven university students and the restrictive covenants limited the usage of the property to single family residential purposes, it erred by permanently enjoining defendants from allowing more than one person to occupy the subject property unless the persons occupying the same are related by blood or marriage or is a group of persons otherwise structured in the same way as the traditional view of an American family. The case is remanded for application of the correct standard set forth in *Winding Ridge Homeowners Ass'n, Inc. v. Joffe*, 184 N.C. App. 629 (2007).

Appeal by defendants from an order entered 14 February 2006 by Judge Dennis J. Winner in Orange County Superior Court. Heard in the Court of Appeals 14 December 2006.

*Brown & Bunch, PLLC, by Charles Gordon Brown, for plaintiff-appellees.*

*The Brough Law Firm, by G. Nicholas Herman, for defendant-appellants.*

*Jack Holtzman and William D. Rowe, for The North Carolina Justice Center, amicus curia.*

JACKSON, Judge.

On 6 July 2005, several residents ("plaintiffs") of the Franklin Hills Subdivision in Chapel Hill, North Carolina, filed an action against Zalman and Devora Joffe ("defendants"). Defendants are the owners of the lot and residence located at 438 Deming Road in the Franklin Hills Subdivision. Plaintiffs alleged that defendants' leasing of their residence to seven University of North Carolina at Chapel Hill ("UNC") students violated the subdivision's restrictive covenants.

Plaintiffs specifically alleged that defendants were in violation of the restrictive covenants limiting the usage of the property to "single family residential purposes," and the restriction that the lot contain only "one single family residence." On 21 July 2005, defendants answered the complaint, admitting most of its factual allegations but denying that the residence violated any of the restrictive covenants.

The restrictive covenants at issue contain a usage restriction, which provides that "[n]o lot shall be used except for single family residential purposes." The covenant also contains a structural restriction that provides:

> No building shall be erected, altered, placed or permitted to remain on any lot other than one single family residence and its customarily accessory buildings and uses. No duplex houses, apartments, commercial or industrial buildings shall be constructed within the area. This provision shall not be interpreted to preclude the provision of servant's quarters or rooms incidental to the residence and garage structure, nor does it preclude the inclusion of one small light housekeeping apartment within the residential structure . . . .

Zalman Joffe's wholly-owned construction company, Ridge Construction, Inc., acquired the lot at 438 Deming Road, subject to these restrictive covenants, on 14 July 2004. After constructing a residence on the lot, Ridge Construction conveyed the property to defendants.

The residence built on the lot is divided into two dwelling units, consisting of a 1,950 square foot main dwelling unit, and a 750 square foot dwelling with a separate exterior entrance and a separate postal address from the main dwelling unit. The residence contains a total of six bedrooms and five bathrooms, and the power and gas utilities are separately metered for the two dwelling units. Of the seven students leasing the property from defendants, four of the students rented the main dwelling unit, and three students rented the smaller unit.

On 1 November 2005, plaintiffs filed an Amended Verified Petition for Preliminary and Permanent Injunctive Relief to include the seven students as party defendants. Defendants answered this Amended Verified Petition on 2 December 2005, and the students answered on 2 February 2006. All parties involved filed motions for summary judgment, and plaintiffs' motion also sought a permanent injunction. In

response, the student defendants' motion also included a motion for denial of injunctive relief.

In connection with the parties' cross-motions for summary judgment, the uncontroverted affidavits of the students showed that all seven of them lived together in the residence "in a home-like manner." All but one of them were members of the University of North Carolina at Chapel Hill varsity baseball team, and they had been encouraged by their coaches to live together. All of them were otherwise close friends, and they operated their house "in a home-like manner in that all roommates share[d] in common household chores (including yard work), car pool[ed] to class and baseball practice, cook[ed] meals and [ate] together, car pool[ed] to eat out together, and gather[ed] for relaxation in a common family room [the main-floor living area] to watch television, talk and entertain together." They shared a common "Deming Road Household Account" to which all seven contributed to cover "common household expenses and supplies,. cable television, electricity, gas, water, sewage and monthly rent."

A hearing was held on the parties' cross-motions for summary judgment, and on 14 February 2006, the trial court entered an order granting summary judgment in part for plaintiffs and in part for defendants. The trial court held that defendants were not in violation of the structural restriction limiting the residence to a single-family dwelling. However, the trial court also held that defendants were in violation of the usage restriction, and further held that the seven students did not constitute a single family. The trial court, in its discretion, also permanently enjoined defendants "to not allow more than one person to occupy the subject property unless the persons occupying the same are related by blood or marriage or is a group of persons otherwise structured in the same way as the traditional view of an American family."

Defendants appeal from the portion of the order finding them in violation of the usage restriction and permanently enjoining defendants from allowing "more than one person to occupy the subject property unless the persons occupying the same are related by blood or marriage or is a group of persons otherwise structured in the same way as the traditional view of an American family."

On appeal, our standard of review for an order granting summary judgment is *de novo. Stafford v. County of Bladen*, 163 N.C. App. 149, 151, 592 S.E.2d 711, 713 (2004), *appeal dismissed*, 358 N.C. 545, 599

S.E.2d 409 (2004). Summary judgment is only appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Leake v. Sunbelt, Ltd. of Raleigh*, 93 N.C. App. 199, 201, 377 S.E.2d 285, 287 (1989). "[I]n considering summary judgment motions, we review the record in the light most favorable to the nonmovant." *Id.* "The entry of summary judgment presupposes that there are no issues of material fact." *Cieszko v. Clark*, 92 N.C. App. 290, 292-93, 374 S.E.2d 456, 458 (1988). Thus, "[f]indings of fact and conclusions of law are not necessary in an order determining a motion for summary judgment," and, "such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment." *Bland v. Branch Banking & Tr. Co.*, 143 N.C. App. 282, 285, 547 S.E.2d 62, 64-65 (2001).

"Restrictive covenants are strictly construed, but they should not be construed 'in an unreasonable manner or a manner that defeats the plain and obvious purpose of the covenant.' " *Hultquist v. Morrow*, 169 N.C. App. 579, 582, 610 S.E.2d 288, 291 (quoting *Cumberland Homes, Inc. v. Carolina Lakes Prop. Owners' Ass'n*, 158 N.C. App. 518, 521, 581 S.E.2d 94, 97 (2003)), *disc. rev. denied*, 359 N.C. 631, 616 S.E.2d 235 (2005). " 'The fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions.' " *Id.* (quoting *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967)). Covenants that restrict the free use of property are to be strictly construed against limitations upon such use. *Long*, 271 N.C. at 268, 156 S.E.2d at 239.

> [I]n interpreting restrictive covenants, doubt and ambiguity are resolved in favor of the unrestricted use of property, " 'so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.' "

*Hultquist*, 169 N.C. App. at 584-85, 610 S.E.2d at 292 (quoting *Long*, 271 N.C. at 268, 156 S.E.2d at 239).

Defendants contend that our Supreme Court's holding in *Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E.2d 174 (1981), controls the instant case. In *Hobby*, the plaintiff subdivision residents sought to enforce the subdivision's restrictive covenants against a nonprofit

corporation which operated a family care home in a dwelling located in the subdivision. The family care home housed mentally retarded adults, along with adult caretakers who also lived in the residence. In *Hobby*, the restrictive covenant at issue read as follows:

> No lot shall be used except for residential purposes, but nothing herein shall be construed to mean that a lot may not be converted to a street regardless of the type of use made of such street. No building shall be erected, altered, placed, or permitted to remain on any building unit other than one detached single-family dwelling not to exceed 2 1/2 stories in height, a private garage for not more than three cars and outbuildings incidental to residential use. . . .

*Hobby* 302 N.C. at 65-66, 274 S.E.2d at 176. In interpreting this restrictive covenant and applying it to the defendants' proposed usage of the property, the Court held that the defendants' use of the property was for residential purposes. *Id.* at 74, 274 S.E.2d at 181. The Court held that the residents and the adult caretakers operated the residence "in such a manner that the residents are able to live in an atmosphere much like that found in the homes of traditionally structured American families." *Id.* at 72, 274 S.E.2d at 180. There, the Court also stated that

> [w]hile we deem it unnecessary to reach the question of whether the individuals living at the home constitute a family, we are compelled to observe that the surrogate parents and the adults subject to their supervision function as an integrated unit rather than independent persons who share only the place where they sleep and take their meals as would boarders in a boarding house.

*Id.* at 73, 274 S.E.2d at 180.

This Court has held that "[i]n interpreting ambiguous terms in restrictive covenants, the intentions of the parties at the time the covenants were executed 'ordinarily control,' and evidence of the situation of the parties and the circumstances surrounding the transaction is admissible to determine intent." *Angel v. Truitt*, 108 N.C. App. 679, 681, 424 S.E.2d 660, 662 (1993) (quoting *Stegall v. Housing Auth.*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971)). In the absence of any evidence of intent regarding the meaning of "single family," courts must interpret the term consistent with its "natural meaning." *Hobby*, 302 N.C. at 71, 274 S.E.2d at 179. As noted *supra*, our courts previously have implied that the term "family" should be construed to

**DANAHER v. JOFFE**

[184 N.C. App. 642 (2007)]

exclude "independent persons who share only the place where they sleep and take their meals" and are not an "integrated unit." *Id.*, 302 N.C. at 73, 274 S.E.2d at 180; *see also Smith v. Assoc. for Retarded Citizens*, 75 N.C. App. 435, 440, 331 S.E.2d 324, 327 (1985).

In the instant case, the restrictive covenant at issue fails to define the term "single family" or any of the words comprising that term. Moreover, the additional restrictive covenants applicable to the subject property do not define "single family" or "family," nor do they offer any insight as to how the terms are to be interpreted ·or as to what were the intentions of the original drafters. *See Long*, 271 N.C. at 268, 156 S.E.2d at 238.

Here, the trial court found that defendants leased the subject property to seven college students. The trial court also found as fact that the students "share meals together, ride in carpools to school together, socialize together, and use a joint checking account to [pay] the rent and utility expenses of the house which they have rented." Affidavits submitted by the students state that the "house is operated in a home-like manner" and that they share common household duties and expenses. Although the findings do not indicate whether or not the students are related biologically or by marriage, the evidence contained in the record indicates that they are not. The evidence shows that the seven students are in fact not related biologically or by marriage, and that all of the students, with the exception of one, are members of the university's baseball team and were encouraged to live together by their coaches. The evidence indicates that the students are close personal friends only. There is nothing indicating that the students considered themselves to be a "family" or anything more than close personal friends and teammates. Based upon the evidence in the record, we hold the trial court properly found as a fact that the students were "not a single family." Defendants failed to produce evidence that the students considered themselves to be a "family" or that they operated their home in any manner other than one out of convenience.

Thus we hold the trial court's holding that plaintiffs were in violation of the usage restriction was proper.

However, we are unpersuaded that the trial court's judgment that plaintiffs are enjoined from permitting "more than one person to occupy the subject property unless the persons occupying the same are related by blood or marriage or is a group of persons otherwise structured in the same way as the traditional view of an American

DANAHER v. JOFFE

[184 N.C. App. 642 (2007)]

family" is supported by our caselaw. We do not believe that this definition is supported by our Court's precedents. *See Hobby*, 302 N.C. at 71-73, 274 S.E.2d at 179-80; *Winding Ridge Homeowners Ass'n, Inc. v. Joffe*, 184 N.C. App. 629, 637, 646 S.E.2d 801, 807 (2007); *Smith*, 75 N.C. App. at 440, 331 S.E.2d at 327.

Therefore, we remand to the trial court for application of the correct standard as set forth in *Winding Ridge*, 184 N.C. App. at 637; 646 S.E.2d at 807.

Affirmed in part, and Remanded.

Judge CALABRIA concurs.

Judge GEER concurs in a separate opinion.

GEER, Judge, concurring.

This appeal turns essentially on a single question: What does the restrictive covenant mean when it refers to a "single family"? I believe that my views on this question are consistent with the majority, and I have written separately only to clarify further how a court should determine whether a group of unrelated individuals constitutes a "single family" for purposes of a restrictive covenant.

It is popular to suggest that, in earlier times, there was more consensus about how to define a "family," but such a view is not fully supportable. As the then interim Dean of Emory Law School pointed out in a 2005 article:

In the first half of the twentieth century, "single family" had a flexible meaning depending upon the context. For many purposes the concept was interchangeable with "household," the key terminology used by the U.S. Census and social demographers from the eighteenth to mid-twentieth century. In light of the emphasis decades later on defining families as those related by "blood, marriage or adoption," it is striking that until then (and even later) there was widespread agreement that a single-family residence restriction was not violated by the presence of servants and domestics residing on the premises. A dictionary relied upon by a 1905 decision defined family as "persons collectively who live together in a house or under one head or manager; a household, including parents, children, and servants, *and, as the case may be, lodgers or boarders.*"

Frank S. Alexander, *The Housing of America's Families: Control, Exclusion, and Privilege*, 54 Emory L.J. 1231, 1247 (2005) (emphasis added) (quoting *Robbins v. Bangor Ry. & Elec. Co.*, 100 Me. 496, 505-06, 62 A. 136, 140 (1905)).

Only after World War II did restrictive covenants and the courts express a preference for the "nuclear family," *id.* at 1250, a concept first created in 1949, *id.* at 1259. Yet, because a "nuclear family" is defined as consisting of a married man and woman with their off-spring, *id.*, few would contend today that a "single family" should be defined to mean only a "nuclear family." Such an approach would exclude extended families, including elderly parents; domestic part-nerships; or families caring for foster children.

Because this appeal involves a restrictive covenant, the task for the trial court and this Court is to determine what was intended by "single family" when the restrictive covenant was drafted. Plaintiffs do not urge an overly narrow construction, but rather sug-gest that "single family" should allow occupancy by one person; by more than one person if related by blood, marriage, or adoption; or by "a group that is structured substantively like a family (i.e., an 'inte-grated unit')." The "integrated unit" test is drawn from *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E.2d 174 (1981), in which our Supreme Court held, with respect to a group home:

> While we deem it unnecessary to reach the question of whether the individuals living at the home constitute a family, we are compelled to observe that the surrogate parents and the adults subject to their supervision *function as an integrated unit* rather than independent persons who share only the place where they sleep and take their meals as would boarders in a boarding house.

*Id.* at 73, 274 S.E.2d at 180 (emphasis added). Defendants also point to *Hobby* and advocate for an "integrated unit" test, arguing that the students meet that test.

*Hobby* does not specifically explain what would be considered "an integrated unit," apart from stating that it does not include people operating independently and only sleeping and eating together. The Supreme Court, however, immediately after this discussion of "fam-ily," cited *Crowley v. Knapp*, 94 Wis. 2d 421, 288 N.W.2d 815 (1980), as support for the Court's analysis. *Crowley* considered whether a

group home for mentally retarded adults violated a restrictive covenant limiting the property's use to a single family dwelling for residential purposes only. *Id.* at 424, 288 N.W.2d at 817. In the portion of the opinion distinguishing a group home from a boarding house, the Wisconsin Supreme Court stressed: "[T]he [group home] residents regard the home as their permanent residence. This is not a boarding house; the same eight people have resided at the home since it opened, and the record clearly indicates that they planned to remain there permanently." *Id.* at 439, 288 N.W.2d at 824.

I believe, consistent with *Crowley*, that an important component of *Hobby's* "integrated unit" test is a requirement that the group of unrelated persons are not transient—as is true with a boarding house—but rather intend to reside as a stable unit for an indefinite period of time. To hold, as defendants urge, that the test is met simply by jointly doing the housekeeping and paying the bills would place little limitation at all on the use of the home. It essentially equates a restriction regarding "single family use" to a restriction requiring only "residential use," even though the "single family" provision necessarily intends to impose a narrower restriction than just "residential use." There must be something more for the restrictive covenant to have any meaning.

Other courts, including the cases predominately relied upon by defendants, have likewise concluded that the intended stability and permanency of the group is relevant to determining whether the group is structured like a family. The New York Court of Appeals, in considering whether a group constituted a "single family" for purposes of a zoning ordinance, noted: "It is significant that the group home is structured as a single housekeeping unit and is, to all outward appearances, a relatively normal, stable, and permanent family unit, with which the community is properly concerned." *City of White Plains v. Ferraioli*, 34 N.Y.2d 300, 304, 313 N.E.2d 756, 758, 357 N.Y.S.2d 449, 452 (1974). The court ultimately concluded that "[s]o long as the group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living, it conforms to the purpose of the ordinance [limiting residence to a single family.]" *Id.* at 305-06, 313 N.E.2d at 758, 357 N.Y.S.2d at 453. As an example of a group of people who would not comply with the ordinance, the court pointed to "a temporary living arrangement as would be a group of college students sharing a house and commuting to a nearby school." *Id.* at 304-05, 313 N.E.2d at 758, 357 N.Y.S.2d at 452. The court explained: "Every year

or so, different college students would come to take the place of those before them. There would be none of the permanency of community that characterizes a residential neighborhood of private homes." *Id.* at 305, 313 N.E.2d at 758, 357 N.Y.S.2d at 452.

Similarly, in *Albert v. Zoning Hearing Bd. of North Abington Twp.*, 578 Pa. 439, 452-53, 854 A.2d 401, 409 (2004), the Pennsylvania Supreme Court observed that "it is undeniable that inherent in the concept of 'family' and, in turn, in the concept of a 'single-family dwelling,' is a certain expectation of relative stability and permanence in the composition of the familial unit." The court, therefore, "conclude[d] that in order to qualify as a 'single housekeeping unit,' a group of individuals in a single household must not only function as a family within that household, but in addition, the composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as purely transient." *Id.* at 453, 854 A.2d at 410. *See also Commonwealth v. Jaffe*, 398 Mass. 50, 57, 494 N.E.2d 1342, 1346-47 (1986) (holding that "the tenants' living arrangement simply did not achieve the permanency and cohesiveness inherent in the notion of a single housekeeping unit"); *Hill v. Cmty. of Damien of Molokai*, 121 N.M. 353, 361, 911 P.2d 861, 869 (1996) (holding that group home did not violate restrictive covenant limiting property to single family use when group home exhibited stability, permanency, and functional lifestyle equivalent to that of traditional family unit).

Defendants point to *Borough of Glassboro v. Vallorosi*, 117 N.J. 421, 568 A.2d 888 (1990), and *McMinn v. Town of Oyster Bay*, 105 A.D.2d 46, 482 N.Y.S.2d 773 (App. Div. 2d Dep't 1984), *aff'd*, 66 N.Y.2d 544, 488 N.E.2d 1240, 498 N.Y.S.2d 128 (1985), as supporting their contention that the students constituted a single housekeeping unit and, therefore, a family. Both of those decisions, however, recognize the same principles set forth above: that a single housekeeping unit must not only function as a unit, but also have a certain degree of stability and permanence.

In *Vallorosi*, the New Jersey Supreme Court quoted with approval from *Open Door Alcoholism Program, Inc. v. Bd. of Adjustment of New Brunswick*, 200 N.J. Super. 191, 491 A.2d 17 (App. Div. 1985):

"It is thus evident that in order for a group of unrelated persons living together as a single housekeeping unit to constitute a single family in terms of a zoning regulation, they must exhibit a kind of stability, permanency and functional lifestyle which is equivalent to that of the traditional family unit. In our view, the

residents of plaintiff's proposed halfway house, although comprising a single housekeeping unit, would not bear these generic characteristics of a single family. While the residents would share in the household responsibilities and dine together, their affiliation with one another would be no different than if they were fellow residents of a boarding house. Clearly, their living arrangements would not be the functional equivalent of a family unit. The individual lifestyles of the residents and the transient nature of their residencies would not permit the group to possess the elements of stability and permanency which have long been associated with single-family occupancy."

*Vallorosi,* 117 N.J. at 431, 568 A.2d at 893-94 (quoting *Open Door Alcoholism Program,* 200 N.J. Super. at 199-200, 491 A.2d at 22).

The New Jersey Supreme Court then held that the evidence in *Vallorosi,* involving students renting a house purchased by relatives of one of the students, presented "unusual circumstances" that substantially complied with the requirement of a stable and permanent living unit. *Id.* at 432, 568 A.2d at 894. The court observed in passing, however, that "[i]t is a matter of common experience that the costs of college and the variables characteristic of college life and student relationships do not readily lead to the formation of a household as stable and potentially durable as the one described in this record." *Id.,* 568 A.2d at 894-95. *See also Open Door Alcoholism Program,* 200 N.J. Super. at 197, 491 A.2d at 21 ("The controlling factor in considering whether a group of unrelated individuals living together as a single housekeeping unit constitutes a family, for purposes of compliance with a single-family zoning restriction, is whether the residents bear the generic character of a relatively permanent functioning family unit.").

Defendants also point to the New York intermediate appellate court decision in *McMinn,* in which the owners rented their house to four unrelated young men who were friends and coworkers. In holding that these four men functioned as "a single housekeeping unit" and, therefore, qualified as a "single family," the court stressed that, consistent with the New York Court of Appeals' opinion in *Ferraioli,* the group was "a normal, stable and permanent unit" that made the group's use of the house "compatible with the residential neighborhood in which it [was] located." 105 A.D.2d at 58, 482 N.Y.S.2d at 782.

Based upon the reasoning of courts across the country confronted with the issue present in this case, I believe that a "single fam-

ily" can be defined as a "single housekeeping unit" or, alternatively, as in *Winding Ridge Homeowners Ass'n, Inc. v. Joffe*, 184 N.C. App. 629, 637, 646 S.E.2d 801, 807 (2007), as a group "substantively structured as an integrated family unit." Other jurisdictions have made clear that a group does not meet the "single housekeeping unit" test unless the members show both (1) that they function as a family within the house and (2) that the composition of the group is relatively stable and permanent.

I believe the combination of these two factors is sufficient to establish that a group of unrelated individuals constitutes a "single housekeeping unit" or is "substantively structured as an integrated family unit," such that the group is a "single family" for purposes of a restrictive covenant. Without the requirement of stability and permanence, it would be difficult to distinguish a group living together in a house—sleeping, eating, and enjoying entertainment together—from a boarding house. I believe that *Hobby's* analysis of "family," including its citation to *Crowley*, requires such a two-factor approach.

In this case, defendants have offered evidence of the first factor, involving a family-type lifestyle, by showing that the baseball players share the chores and bills and engage in other activities together. Defendants have not, however, demonstrated that this group of ball players is a relatively permanent and stable group. Only three of the seven tenants filed affidavits, and they stated only that they intended to stay in the house for another year and a half. The record contains no evidence suggesting that the identity of the seven tenants would remain the same during that year and a half.

I do not believe that a group—the identity of whose members could change—that only intends to live together for a limited period of time during the school year and while attending college has the permanence and stability necessary to be considered a "single family." The New York Court of Appeals' observation bears repeating: "Every year or so, different college students would come to take the place of those before them. There would be none of the permanency of community that characterizes a residential neighborhood of private homes." *Ferraioli*, 34 N.Y.2d at 305, 313 N.E.2d at 758, 357 N.Y.S.2d at 452.