HARRY W. ANGEL AND WIFE, DONNA G. ANGEL; DAVID McNEILL MELVIN; JOHN E. PALMER AND WIFE, ILENE C. PALMER; JOHN A. HODGIN; JAMES DARYL FLOYD AND WIFE, TAMMY R. FLOYD; DENNIS J. LENAHAN AND WIFE, PAMELA LENAHAN v. JOEY W. TRUITT AND WIFE, CYNTHIA A. TRUITT

No. 9118SC1169

(Filed 19 January 1993)

**Deeds § 74 (NCI4th)— restrictive covenants—modular home not mobile home**

A structure placed by defendants on their land did not fall within their restrictive covenant's ban against mobile homes, since the structure was a "modular home," constructed in three pieces at a factory; the three units had no axles and did not have the capacity to travel on the public roads on their own attached wheels like mobile homes; the units had to be lifted by crane onto a dolly; and once lifted off the dolly by crane and placed on a permanent foundation, the structure could only be moved in the manner in which site-built homes are built.

**Am Jur 2d, Covenants, Conditions and Restrictions § 213.**

Appeal by plaintiffs from judgment entered 20 August 1991 in Guilford County Superior Court by Judge James M. Webb. Heard in the Court of Appeals 23 October 1992.

*Coggin, Hoyle, Blackwood & Brannan, by W. Scott Brannan, for plaintiff-appellants.*

*Wilson & Evans, by Ralph A. Evans, for defendant-appellees.*

GREENE, Judge.

Plaintiffs appeal from the entry of summary judgment in favor of defendants Joey W. Truitt and Cynthia A. Truitt (the Truitts) in plaintiffs' action to enforce a restrictive covenant.

Plaintiffs and the Truitts own property within a subdivision known as the Joseph L. Berry Subdivision. Both plaintiffs and the Truitts acquired their respective properties subject to certain restrictive covenants within their chain of titles. The restrictive covenants were placed in the Truitts' chain of title in 1981. One of these covenants provides that "[n]o mobile home shall be allowed to remain on the property for over twelve (12) months during

house construction." In February, 1991, Steve Chandler, agent for a development company, was authorized by the Truitts to obtain a building permit from Guilford County to allow a structure to be placed on their property. The building permit issued refers to the structure as a three-bedroom "modular home." Upon learning of the Truitts' plans, plaintiffs hired an attorney, who wrote a letter to the Truitts demanding that they cease efforts to place the structure on their property because it would violate the restrictive covenant against "mobile home[s]." When the Truitts did not respond, plaintiffs sought a temporary restraining order, and ultimately a permanent injunction, to prevent the structure from being placed in the subdivision. The Truitts answered that the structure was not a "mobile home," and therefore not violative of the restrictive covenant. Both parties moved for summary judgment, and the plaintiffs filed a notice of *lis pendens*.

Both parties offered evidence in support of their motions for summary judgment. Included in the evidence was the affidavit of Joseph L. Berry (Berry), one of the grantors in the deed establishing the restrictive covenants. In the affidavit, Berry states that it was his intention and that of the other grantors "that the term 'mobile home' include 'modular homes' as well as [the structure at issue]." Other evidence offered reveals that in late February or early March the structure was placed on the Truitts' lot. The structure is a pre-fabricated dwelling unit containing 1849 square feet, with vinyl siding, an asphalt shingle roof, dry wall interior, and constructed in compliance with the North Carolina Uniform Residential Building Code, adopted pursuant to the State Building Code (*see* N.C.G.S. § 143-138 (1990) ). The structure was delivered to the Truitts' lot in three sections, each section being over thirteen feet wide and forty feet long. Each section, or module, has a permanent steel flooring system which is designed to both provide longitudinal support for transport over the public highways and to hold up the air ducts, insulation, water lines, and sewer lines after the structure is affixed to its permanent foundation. Each module was transported from the factory by lifting the module onto a dolly. A removable tongue was extended from the front of each module, which allowed the module and dolly to be pulled by a tractor or truck. The modules could not be attached directly to axles, and could not be transported as constructed without being placed on the dolly. Temporary taillights were attached to each module and all three modules were delivered to the Truitts' lot.

ANGEL v. TRUITT

[108 N.C. App. 679 (1993)]

The tongue and taillights were removed and the individual modules were lifted from the dollies by a construction crane. Each module was placed on previously constructed support piers and a brick, load-bearing foundation. In addition to the piers and brick foundation, the on-site construction work consisted of bolting the three modules together, connecting the mechanical, electrical, and plumbing systems between the three modules and to the outside, installation of the molding and trim work, and finishing and painting the sheetrock where the modules are connected.

Dennis Lee Jones, co-owner of R-Anell Custom Homes, the builder of the structure, testified that the structure on the Truitts' lot is a "modular home," and must be placed on a permanent foundation in order to be used as a dwelling. The affidavits of two professional house movers reveal that if the structure were to be moved, the exact same procedures would be required as are required for moving a site-built house. The trial court granted summary judgment for the Truitts on 20 August 1991, thus permitting the placement of the structure on the property.

Plaintiffs contend that the structure on the Truitts' lot is a "mobile home" and therefore violates the restrictive covenant. In the alternative, they argue that the structure is a "manufactured home," and therefore, by statute, a "mobile home" within the meaning of the restrictive covenant. N.C.G.S. § 160A-383.1(f) (1987). The Truitts argue that the structure is neither a "mobile home" nor a "manufactured home," and therefore not barred by the restrictive covenant.

---

The dispositive issue is whether the structure falls within the restrictive covenant's ban against "mobile home[s]."

In interpreting ambiguous terms in restrictive covenants, the intentions of the parties at the time the covenants were executed "ordinarily control," and evidence of the situation of the parties and the circumstances surrounding the transaction is admissible to determine intent. *Stegall v. Housing Auth.*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971). "But it . . . is not primarily the intention of the parties which the court is seeking, but the meaning of the words at the time and place when they were used." 4 Samuel Williston, *A Treatise on the Law of Contracts* § 613 (Walter H.E. Jaeger ed., 3d ed. 1961); *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981)

(equivocal words in covenant interpreted "according to the natural meaning of the words"); 7 George W. Thompson, *Commentaries on the Modern Law of Real Property* § 3160 (John S. Grimes ed., 1962 Repl.) [hereinafter *Thompson*] ("language used will be read in its ordinary sense"). Thus, "[n]either the testimony nor the declarations of a party is competent to prove intent." *Stegall*, 278 N.C. at 100, 178 S.E.2d at 828. Intent is instead properly discovered from the language of the document itself, the circumstances attending the execution of the document, and the situation of the parties at the time of execution. *Smith v. Smith*, 249 N.C. 669, 675, 107 S.E.2d 530, 534 (1959). Surrounding circumstances include relevant "statutes and rules of law" existing at the time of execution of the document, as these give context to the words used by the parties. 3 Arthur L. Corbin, *Corbin On Contracts* § 551 (1960); *Poole & Kent Corp. v. C.E. Thurston & Sons, Inc.*, 286 N.C. 121, 129, 209 S.E.2d 450, 455 (1974) ("contracting parties are presumed to contract in reference to the existing law"); *Thompson* (parties are presumed to have considered surrounding circumstances); *Tull v. Doctors Bldg., Inc.*, 255 N.C. 23, 40, 120 S.E.2d 817, 829 (1961) (restrictive covenant not affected by subsequently enacted zoning ordinance). Any doubts regarding the intention of the parties must be resolved "in favor of the unrestricted use of the property." *Stegall*, 278 N.C. at 100, 178 S.E.2d at 828.

The restrictive covenant in question was executed in December, 1981, and prohibits the placement of a "mobile home" on the property, except while a house is being constructed on the property and then for a period of time not to exceed twelve months. Because "mobile home" is not a clearly defined term, it is necessary to determine the intentions of the parties as of 30 December 1981, the day of the execution of the covenants. In this record the only evidence offered which directly bears on intent was the affidavit of Berry that it was his intention as a party to the covenant to interpret "mobile home" as including structures of the type in question. The Truitts objected to the admission of this evidence and we agree. As earlier noted, a declaration of a party to an agreement is not competent evidence to prove intent. *Stegall*, 278 N.C. at 100, 178 S.E.2d at 828. Furthermore, the record is devoid of any evidence of the circumstances surrounding the execution of the agreement or any evidence regarding the situation of the parties at the time of the execution of the document. The fact that the structure may have been constructed on or about January,

## ANGEL v. TRUITT

[108 N.C. App. 679 (1993)]

1991 in compliance with provisions enacted under the State Building Code is not relevant. *Starr v. Thompson*, 96 N.C. App. 369, 371, 385 S.E.2d 535, 536 (1989) (statutes and ordinances in effect at time of trial are "irrelevant"). Likewise, the declaration by the Legislature in 1987 that any "manufactured home" as defined in N.C.G.S. § 143-145(7) shall be a "mobile home," is not material to the issue of the parties' intent in 1981.[1] N.C.G.S. § 160A-383.1(f) (1987).

In the absence of any evidence of intent regarding the meaning of "mobile home," courts must interpret the term consistent with its "natural meaning." *J.T. Hobby & Son, Inc.*, 302 N.C. at 71, 274 S.E.2d at 179. That is, the term will be assigned its customary definition as it existed in 1981. A dictionary with the copyright date on or about 1981 is an appropriate place to ascertain the then customary definitions of words and terms. *See State v. Martin*, 7 N.C. App. 532, 533, 173 S.E. 2d 47, 48 (1970). The 1982 edition of *The American Heritage Dictionary* defines "mobile home" as "[a] house trailer that is used as a permanent home and is usually hooked up to utilities." *American Heritage Dictionary* 805 (2d ed. 1982). Trailer is defined in the same dictionary as "[a] large transport vehicle designed to be hauled by a truck or tractor." *Id.* at 1285.[2] Using these accepted definitions, the evidence, which is not disputed, supports summary judgment for the Truitts. *Rose v. Guilford County*, 60 N.C. App. 170, 172, 298 S.E.2d 200, 202 (1982) (summary judgment appropriate if no genuine issue of material fact and moving party entitled to judgment as a matter of law). The structure placed on the Truitts' lot is not designed for transport. The modules are not constructed with a permanent chassis nor do they have the same capacity to travel on the public roads on their own attached wheels as do mobile homes. In order to transport the modules they must be lifted by crane onto a dolly. The modules themselves have no axles to which wheels could be attached and could not travel without the dolly. Once lifted off the dolly by crane and placed on a permanent foundation, they can be moved only in the

---

1. Because N.C.G.S. § 160A-383.1(f) is not relevant, we need not determine whether the structure in question is a "manufactured home."

2. A similar meaning may be found in *American Jurisprudence 2d*, which defines mobile home as "a movable or portable dwelling built on a chassis, connected to utilities, designed without a permanent foundation, and intended for year-round living . . . ." 54 Am. Jur. 2d, *Mobile Homes, Trailer Parks, and Tourist Camps* § 1 (1971).

manner in which site-built homes are moved. The affidavits of professional house movers reveal that in order to move the structure the modules are not separated and placed back on the dolly, but are moved as one unit in exactly the same manner that a house built on-site is moved. Therefore, the structure at issue is not a "mobile home" within the meaning of the restrictive covenant.

Accordingly, the summary judgment is

Affirmed.

Judges WYNN and WALKER concur.

Judge WALKER concurred in this opinion prior to 8 January 1993.