## BRIGGS v. RANKIN

[127 N.C. App. 477 (1997)]

FAYE AND WOODY BRIGGS, MARY AND TOM CLELAND, SUE AND STEVE
EDWARDS, PEGGY AND KERMIT DOTSON, RADA AND RAY GREENLAW,
BONNIE AND LINDSEY HODGES, SUE AND MARTY LUKACH, FAYE AND DON
MOOS, JOAN AND VANCE REECE, ANN AND CHARLIE STEWART, AND
BARBARA WATKINS AND JOE WALLACE, Plaintiffs-Appellants v. EDWARD
M.G. RANKIN AND MARGARET P. RANKIN, Defendants-Appellees

No. COA96-1443

(Filed 7 October 1997)

## 1. Deeds § 74 (NCI4th)— restrictive covenant—category of home—characteristics considered

In determining the category of a home manufactured off-site to decide whether it violates subdivision restrictive covenants, the trial court should consider (1) whether the structure must comply with the N.C. Regulations for Manufactured/Mobile Homes, which are consistent with HUD national regulations, or with the N.C. State Building Code; (2) whether the structure is attached to a permanent foundation; (3) whether, after constructed, the structure can easily be moved or has to be moved like a site-built home; (4) whether title to the home is registered with the N.C. Department of Motor Vehicles or must be conveyed by a real property deed; and (5) how the structure is delivered to the homesite.

## 2. Deeds § 74 (NCI4th)— restrictive covenant—modular home not prohibited trailer

Defendants' modular home was not a "trailer" prohibited by a subdivision restrictive covenant where the home had to comply with the requirements of the State Building Code; defendants were required to obtain a building permit prior to placing the first two sections on the lot; the home was subject to periodic inspections by the county building inspector; the home was attached to a permanent foundation of poured concrete with load bearing brick walls and support piers; a front porch with a roof and a back deck were added to the main portion of the home; a separate site-built garage on a permanent foundation was constructed and attached to the home via a breezeway; the home can only be moved in the same way as a site-built home; and, while sections of the home were delivered by attaching a tongue and wheels to the steel frame and defendants acquired title through a bill of sale, title to the installed home must pass by way of a real property deed.

Appeal by plaintiffs-appellants from Order entered 6 May 1996 by Judge F. Gordon Battle in Chatham County Superior Court allowing defendants-appellees' motion for summary judgment. Heard in the Court of Appeals 25 August 1997.

*Barber, Bradshaw & Vernon, by Patrick E. Bradshaw and Nicolas P. Robinson, for plaintiffs-appellants.*

*Pulley, Watson, King & Lischer, P.A., by Richard N. Watson and Stella A. Boswell, for defendants-appellees.*

WALKER, Judge.

All of the parties to this action are owners of residential lots in the Jordan Woods Subdivision in Chatham County, North Carolina. Defendants acquired title to Lot 18 in this subdivision by deed dated 13 June 1995. The deed provides that Lot 18 is subject to the Declaration of Restrictions and Easements for Jordan Woods Subdivision, recorded on 10 January 1978 in the Chatham County Registry. These restrictions, *inter alia*, prohibit the location and use of "trailers" in the subdivision.

Prior to purchasing Lot 18, defendants met with the owners of the lot as well as the attorney for the owners. At this meeting, the defendants discussed their intention of constructing a modular home on the lot and showed the owners and the attorney the plans for their home. The defendants were assured that their modular home would not violate the restrictive covenant. The defendants later learned that the owners of the adjacent lot had been permitted to build a modular home on their lot in 1987. On 14 June 1995, the defendants obtained a building permit from Chatham County for the construction of a modular home and detached garage. On 1 September 1995, installation of the defendants' modular home was begun.

On 7 September 1995, plaintiffs filed a complaint and a motion for preliminary injunction alleging that defendants had begun to construct a "trailer" in violation of the restrictive covenant. Following a hearing on the matter, the trial court entered an order dated 21 September 1995 denying plaintiff's motion for a preliminary injunction.

Both parties subsequently filed motions for summary judgment which were were heard on 30 April 1996. By an order dated 6 May 1996, the trial court granted defendants' motion for summary judgment.

At the outset, we first note that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Snipes v. Jackson*, 69 N.C. App. 64, 71-72, 316 S.E.2d 657, 661, *disc. review denied and appeal dismissed*, 312 N.C. 85, 321 S.E.2d 899 (1984). Further, the trier of fact "must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial." *Snipes*, 69 N.C. App. at 72, 316 S.E.2d at 661.

In this case, plaintiffs assign as error the trial court's granting summary judgment for defendants and denial of plaintiffs' motion for summary judgment because, as a matter of law, defendants' home is a "trailer" within the meaning of the restrictive covenant. Paragraph 6 of the restrictive covenant provides in pertinent part that:

6. No structure of a temporary character, trailer . . . or any other outbuilding shall be inhabited, located or used upon any building unit or lot at any time as a residence, either temporarily or permanently.

There are two types of framing systems for modular homes— steel or wood. The defendants chose to have their home constructed with a steel framing system. Although the framing system does not change the character of the home, it does determine the available methods for moving the home to the site. By choosing a steel framing system, the defendants could have their home delivered either by being lifted onto a dolly or by attaching a tongue and wheels to its steel frame. In order to save on expenses, the defendants chose to have their home delivered by attaching a tongue and wheels to its steel frame.

After the first two sections were delivered, they were attached to a permanent foundation of poured concrete with load bearing brick walls and support piers. The home as constructed consists of three bedrooms and three baths, and is situated on a 5.6 acre lot. It has a total of 3,647 square feet, which includes 2,132 square feet of living area; a 600 square foot back deck; a 156 foot front porch; and a 759 square foot three-car garage. At various stages both during and after completion of the home, it was inspected to insure compliance with the N.C. State Building Code (the Building Code).

This Court, in *Starr v. Thompson*, 96 N.C. App. 369, 371, 385 S.E.2d 535, 536 (1989), stated that "whether a dwelling is a mobile home under . . . a covenant depends upon its characteristics. . . ." *Id.* As the N.C. State Building Code Council has recognized, "[m]odern construction techniques are daily changing what and how America builds. Factory built components, manufactured units, and/or complete manufactured buildings are finished products ready to be marketed." *N.C. State Bldg. Code, Volume VIII—Modular Constr. Regulations* (1994). In light of this, it is important to distinguish between "mobile homes" or "trailers" and "modular homes."

Although this Court has stated that "whether a dwelling is a mobile home [or trailer] . . . [does not depend] . . . upon what it is called by municipal zoning authorities or others or what government agency establishes the building standards," *Starr*, 96 N.C. App. at 371, 385 S.E.2d at 536, such information will aid us in our analysis. According to the Building Code, the terms are defined as follows:

> MANUFACTURED BUILDING—A structure consisting of one or more transportable sections built and labeled within a manufacturing plant facility in accordance with the appropriate State or Federal Construction Code which governs the structure's intended usage when erected on a building site.

> MANUFACTURED HOME (Mobile Home)—A manufactured building designed to be used as a single family dwelling unit which has been constructed and labeled indicating compliance with the HUD administered National Manufactured Housing Construction and Safety Standards Act of 1974.

> . . .

> MODULAR HOME—A manufactured building designed to be used as a one or two family dwelling unit which has been constructed and labeled indicating compliance with the North Carolina State Building Code, Volume VII—Residential.

*N.C. State Bldg. Code, Volume VIII—Modular Constr. Regulations* (1994).

[1] In determining which category a home falls under, it is important to look at all the characteristics of the finished structure, in addition to the chosen method of delivery. Some of the characteristics to consider include: (1) whether the structure must comply with the N.C. Regulations for Manufactured/Mobile Homes, which are consistent

BRIGGS v. RANKIN

[127 N.C. App. 477 (1997)]

with Housing and Urban Development (HUD) national regulations, or with the Building Code; (2) whether the structure is attached to a permanent foundation; (3) whether, after constructed, the structure can easily be moved or has to be moved like a site-built home; (4) whether title to the home is registered with the N.C. Department of Motor Vehicles or title must be conveyed by a real property deed; and, (5) how the structure is delivered to the homesite.

Plaintiffs rely on this Court's recent ruling in *Young v. Lomax*, 122 N.C. App. 385, 470 S.E.2d 80 (1996). The plaintiffs in *Young* were owners of residential lots in Cabarrus County and sought to enjoin defendant from placing a mobile home on a lot in the subdivision in violation of the subdivision's restrictive covenants. Once the home reached its destination, "the wheels and axles were removed and the structure was placed on concrete blocks which were stacked to create piers." *Id.* at 388, 470 S.E.2d at 82. In upholding the summary judgment for plaintiffs, the Court stated that:

> Here, defendants admitted that the structure was delivered to the site in two sections; each section had its own permanent steel chassis consisting of two "I" beams affixed to the flooring system of the unit; each unit was attached to four axles with two wheels per axle; and a truck towed the structure to its present site with the structure riding on its own axles and wheels. We conclude that this evidence established as a matter of law that the structure is a mobile home.

*Id.* at 387-388, 470 S.E.2d at 82.

The *Young* court cited with approval *Starr* in support of its ruling. The plaintiffs in *Starr* contended that the structure on defendant's lot was a "mobile home" in violation of a restrictive covenant. The structure involved consisted of two sections which were 8 feet wide and 40 feet long, for a total square footage of approximately 640 square feet. *Starr*, 96 N.C. App. at 371, 385 S.E.2d at 536. Further, once the wheels and tongues were removed from the sections, they were placed on footings, leading the court to observe that the structure "cannot be distinguished from double-wide mobile home sections that are to be seen daily on the lots of mobile home dealers and rolling down the highways of the state." *Id.* The court held that:

> [A] factory built dwelling, such as the one involved, designed and constructed to travel on wheels from place to place is a "mobile home" within the meaning of a covenant against such structures

as a matter of law, even though the axles, wheels and tongues were removed after the structure was placed on the lot.

*Id.* at 371-372, 385 S.E.2d at 536-537 (*citing City of Asheboro v. Auman,* 26 N.C. App. 87, 214 S.E.2d 621, *cert. denied,* 288 N.C. 239, 217 S.E.2d 663 (1975)).

[2] The present case is distinguishable from both the *Young* and *Starr* cases. First, the defendants' home had to comply with the requirements of the Building Code, and, as such, they were required to obtain a building permit prior to placing the first two sections on the property. Further, this home was subject to periodic inspections by the county's building inspector. *See N. C. State Bldg. Code, Volume VII—Residential,* §112 (1997).

Next, since the home was subject to the Building Code, it had to be attached to a permanent foundation. *See N. C. State Bldg. Code, Volume VII—Residential,* §401 (1997). As noted earlier, after delivery, the first two sections were attached to a permanent foundation of poured concrete with load bearing brick walls and support piers. Later, a front porch with a roof and a back deck were added to the main portion of the home. Finally, a separate site-built, three-car garage on a permanent foundation was constructed and attached to the home via a breezeway. Neither the *Young* nor the *Starr* cases mentioned whether the structures involved were attached to a permanent foundation.

Further, since the defendants' home is attached to a permanent foundation, it can only be moved in the same way as a site-built home. In a similar case, *Angel v. Truitt,* 108 N.C. App. 679, 424 S.E.2d 660 (1993), the plaintiffs brought suit to enforce a restrictive covenant prohibiting the placement of mobile homes within their subdivision. In affirming the trial court's summary judgment for defendants, this Court held that:

> Once lifted off the dolly by crane and placed on a permanent foundation, they can be moved only in the manner in which site-built homes are moved. The affidavits of professional house movers reveal that in order to move the structure the modules are not separated and placed back on the dolly, but are moved as one unit in exactly the same manner that a house built on-site is moved. Therefore, the structure at issue is not a "mobile home" within the meaning of the restrictive covenant.

*Angel,* 108 N.C. App. at 683-684, 424 S.E.2d at 663.

And finally, while the defendants acquired title to their home through a bill of sale, once installed, title to their home must pass by way of a real property deed. In contrast, title to a "mobile home" or "trailer" passes by transfer of a manufacturer's certificate of origin and carries with it a normal motor vehicle title obtained from the N.C. Department of Motor Vehicles. *See* N.C. Gen. Stat. § 20-4.01(23) (1993); N.C. Gen. Stat. § 20-50 (Cum. Supp. 1996).

For the reasons set forth above, the defendants' home is not a "trailer" within the meaning of the restrictive covenant. Accordingly, the trial court properly granted summary judgment in favor of defendants.

Affirmed.

Chief Judge ARNOLD and Judge McGEE concur.