ROBERT L. SANFORD, PLAINTIFF v. ROGER WILLIAMS, SR., AND WIFE KESIA H. WILLIAMS AND THE CITY OF HICKORY, A NORTH CAROLINA MUNICIPAL CORPORATION, DEFENDANTS

No. COA11-1066

(Filed 5 June 2012)

**1. Real Property—restrictive covenants—specific performance—covenants enforceable—covenants not violated**

The trial court did not err by granting summary judgment in favor of defendants on plaintiff's claim for specific performance of restrictive covenants. Although plaintiff had a right to enforce the covenants against defendants, defendants' carport was a permissible structure under the restrictive covenants and the ten-foot side setback requirement which applied to all "homes" pursuant to the covenants did not apply to the carport.

**2. Jurisdiction—building permit—subject matter jurisdiction—administrative remedies not exhausted**

The trial court erred in a zoning and building permit case by failing to dismiss plaintiff's request for a writ of mandamus due to a lack of subject matter jurisdiction. Plaintiff's request for a writ of mandamus specifically concerned defendants' zoning and building permits and plaintiff should have timely appealed the issuance

of those permits to the board of adjustment. Having failed to exhaust his administrative remedies, the trial court was without subject matter jurisdiction to rule on plaintiff's request for a writ of mandamus.

Appeal by plaintiff and defendants from order entered 5 April 2011 by Judge Robert C. Ervin in Catawba County Superior Court. Heard in the Court of Appeals 7 February 2012.

*Wesley E. Starnes, P.C., by Wesley E. Starnes, for the plaintiff.*

*Patrick Harper & Dixon, LLP, by Michael J. Barnett, for Defendants Roger Williams, Sr. and Kesia H. Williams.*

*Gorham, Crone, Green & Steele, LLP, by John W. Crone, III, for Defendant the City of Hickory.*

THIGPEN, Judge.

Robert Sanford ("Mr. Sanford"), Roger Williams, Sr., and his wife, Kesia H. Williams ("Mr. and Mrs. Williams"), and the City of Hickory appeal from a summary judgment order. We must determine whether the trial court erred by (I) granting summary judgment to Mr. and Mrs. Williams on Mr. Sanford's claim for specific performance of certain restrictive covenants; (II) granting Mr. Sanford's motion for summary judgment on his request for a writ of mandamus against the City of Hickory; and (III) ordering the City of Hickory to "make a decision as to the zoning matters in this case within thirty (30) days[.]" Because there is no genuine issue of material fact as to whether the carport violates the restrictive covenants, we affirm the portion of the trial court's order granting summary judgment to Mr. and Mrs. Williams. Furthermore, because the trial court was without subject matter jurisdiction to rule on Mr. Sanford's request for a writ of mandamus against the City of Hickory, we vacate the portions of the order granting Mr. Sanford's motion for summary judgment on his request for a writ of mandamus and ordering the City of Hickory to make a decision within thirty days.

## I. Factual and Procedural History

Mr. Sanford and Mr. and Mrs. Williams are neighbors who own property in the Huntington Forest Subdivision in Hickory, North Carolina. Mr. Sanford and Mr. and Mrs. Williams purchased their properties subject to certain restrictive covenants executed on 17 October 1969 by A B C & M, Inc., the developer of the subdivision.

In late May or early June of 2008, Roger Williams entered into a contract to construct a detached carport at his residence. On 3 June 2008, the City of Hickory issued a zoning permit and Catawba County issued a building permit for the construction of the carport. Both permits included a side setback requirement of five feet.

In August 2008, the City of Hickory Planning and Development Department ("Planning and Development Department") received a request from Mr. Sanford's daughter to investigate the carport. On 7 August 2008, the Planning and Development Department issued a verbal stop work order in connection with its investigation of the carport. However, because the carport was essentially complete at that time, the Catawba County building inspector proceeded with his final inspection. On 18 August 2008, the carport passed final inspection and a certificate of compliance was issued by the Catawba County building inspector.

On 10 October 2008, the City of Hickory Zoning Enforcement Division sent a letter to Mr. and Mrs. Williams regarding a potential zoning violation. The letter stated that "[i]t is the determination of the City that a zoning violation appears to exist regarding an encroachment of the newly constructed carport on your property into the setback area" and "the City will stay any fines or actions for a period of 30 days" to allow Mr. and Mrs. Williams to obtain a survey of their property. Mr. Sanford obtained a survey of his property in September 2008. No further action was taken by the City of Hickory.

On 16 January 2009, Mr. Sanford filed a complaint against Mr. and Mrs. Williams seeking specific performance of certain restrictive covenants and zoning requirements and alleging a claim of trespass. The City of Hickory was later joined as a necessary party. Mr. and Mrs. Williams and the City of Hickory filed motions to dismiss for failure to state a claim and also filed answers alleging several defenses. On 10 March 2011, Mr. Sanford filed a motion for summary judgment. After a hearing on Mr. Sanford's motion, the trial court entered an order on 5 April 2011. The trial court ordered (1) summary judgment be entered against Mr. Sanford, as the moving party, and granted summary judgment to Mr. and Mrs. Williams on Mr. Sanford's claim for specific performance; (2) Mr. Sanford's motion for summary judgment be granted as to his request for a writ of mandamus against the City of Hickory; and (3) the City of Hickory to "make a decision as to the zoning matters in this case within thirty (30) days of the entry of this Order and . . . notify each party in writing of its decision."

Mr. Sanford appeals from the portion of the trial court's order granting summary judgment to Mr. and Mrs. Williams on Mr. Sanford's claim for specific performance. Mr. and Mrs. Williams and the City of Hickory appeal from the portions of the trial court's order granting Mr. Sanford's motion for summary judgment on his request for a writ of mandamus against the City of Hickory and ordering the City of Hickory to "make a decision as to the zoning matters in this case within thirty (30) days[.]"

## II.  Standard of Review

"The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A–1, Rule 56(c) (2011). "Summary judgment, when appropriate, may be rendered against the moving party." *Id.* "[T]he trial judge must view the presented evidence in a light most favorable to the nonmoving party and the party moving for summary judgment bears the burden of establishing the lack of any triable issue." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). Where the trial court's order does not state the legal basis for its ruling, "if the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Wein II, LLC v. Porter*, 198 N.C. App. 472, 478, 683 S.E.2d 707, 712 (2009) (quotation omitted).

## III.  Mr. Sanford's Appeal

[1] Mr. Sanford contends the trial court erred by granting summary judgment to Mr. and Mrs. Williams on Mr. Sanford's claim for specific performance of the restrictive covenants. Specifically, Mr. Sanford contends that he has a right to enforce the covenants against Mr. and Mrs. Williams and that Mr. and Mrs. Williams violated the covenants.

### A.  Right to Enforce Covenants

Mr. Sanford first contends that he has a right to enforce the covenants against Mr. and Mrs. Williams. We agree.

Regarding the enforcement of restrictions on the use of real property in conjunction with a general plan of development, our Supreme Court has outlined the following principles:

1. Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created.

2. The right to enforce the restrictions in such case is not confined to immediate purchasers from the original grantor. It may be exercised by subsequent owners who acquire lots in the subdivision covered by the general plan through *mesne* conveyances from such immediate purchasers.

3. The restrictions limiting the use of land in the subdivision embraced by the general plan can be enforced against a subsequent purchaser who takes title to the land with notice of the restrictions.

4. A purchaser of land in a subdivision is chargeable in law with notice of restrictions limiting the use of the land adopted as a part of a general plan for the development or improvement of the subdivision if such restrictions are contained in any recorded deed or other instrument in his line of title, even though they do not appear in his immediate deed.

*Rice v. Coholan*, 205 N.C. App. 103, 112, 695 S.E.2d 484, 490-91 (quoting *Sedberry v. Parsons*, 232 N.C. 707, 710-11, 62 S.E.2d 88, 90-91 (1950)), *disc. review denied*, 364 N.C. 435, 702 S.E.2d 303 (2010).

In this case, Mr. and Mrs. Williams state in their brief that Mr. Sanford purchased his property "in 1981 from Jerry and Hortense Jordan" and that Mr. and Mrs. Williams are "successors in interest" to the developer who "purchased their property in 2004 from Temple Baptist Church of Hickory, Inc." Mr. and Mrs. Williams' brief also states that both they and Mr. Sanford "purchased their properties subject to certain restrictive covenants[.]" Mr. and Mrs. Williams do not contend they did not have notice of the restrictive covenants. Accordingly, pursuant to the principles outlined in *Rice*, as a subsequent purchaser of a lot in the subdivision, Mr. Sanford may enforce the restrictive covenants against Mr. and Mrs. Williams, who are also

subsequent purchasers who took title to the land with notice of the restrictions. *See id.*[1]

## B. Summary Judgment

Mr. Sanford next contends the trial court erred by granting summary judgment to Mr. and Mrs. Williams because Mr. and Mrs. Williams violated the restrictive covenants. We disagree.

### i. Judicial Construction of Restrictive Covenants

Restrictive covenants "are not favored by the law and they will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of land." *J. T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 70, 274 S.E.2d 174, 179 (1981) (internal citation omitted). However, "clearly and narrowly drawn restrictive covenants . . . are legitimate tools which may be utilized by developers and other interested parties to guide the subsequent usage of property." *Id.* at 71, 274 S.E.2d at 179. Restrictive covenants may be enforced at the summary judgment stage "unless a material issue of fact exists as to the validity of the contract, the effect of the covenant on the unimpaired enjoyment of the estate, or the existence of a provision that is contrary to the public interest." *Page v. Bald Head Ass'n*, 170 N.C. App. 151, 155, 611 S.E.2d 463, 466 (quotation and quotation marks omitted), *disc. review denied*, 359 N.C. 635, 616 S.E.2d 542 (2005).

"Sound judicial construction of restrictive covenants demands that if the intentions of the parties are to be followed, each part of the covenant must be given effect according to the natural meaning of the words, provided that the meanings of the relevant terms have not been modified by the parties to the undertaking." *J. T. Hobby & Son*, 302 N.C. at 71, 274 S.E.2d at 179 (citations omitted). "In interpreting ambiguous terms in restrictive covenants, the intentions of the parties at the time the covenants were executed ordinarily control, and evidence of the situation of the parties and the circumstances surrounding the transaction is admissible to determine intent." *Angel v. Truitt*, 108 N.C. App. 679, 681, 424 S.E.2d 660, 662 (1993) (citation and quotation marks omitted). "Intent is . . . properly discovered from

---

1. We note that pursuant to paragraph two of the restrictive covenants, Mr. Sanford, as an owner of real property in the subdivision, can enforce the restrictions against "the parties hereto, or any of them or their heirs, or assigns[.]" The developer is the only party to the restrictive covenants; thus, Mr. and Mrs. Williams contend Mr. Sanford cannot enforce the restrictive covenants against them because they are not "heirs" or "assigns" of the developer. We, however, find *Rice* controlling and reject this argument.

the language of the document itself, the circumstances attending the execution of the document, and the situation of the parties at the time of execution." *Id.* at 682, 424 S.E.2d at 662 (citation omitted).

### ii. Carport as a Permissible Structure

Mr. Sanford first contends Mr. and Mrs. Williams' carport violates the following restriction:

> 4. All lots in said subdivision as shown on said plat shall be used for residential purposes. No buildings shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage which may have as a part of said garage, a storage room.

Pursuant to paragraph 4, the only buildings permitted to remain on a subdivision lot are "one detached single family dwelling" and "a private garage[.]" Mr. Sanford contends the carport is not a "garage" for purposes of paragraph 4; therefore, the carport is prohibited by the restrictive covenants unless it is part of the "single family dwelling[.]" Mr. and Mrs. Williams contend the carport is a "garage", and alternatively, that it is a permissible type of auxiliary structure. We agree with Mr. and Mrs. Williams.

The restrictive covenants do not specifically define "carport" or "garage"; however, both terms are mentioned in paragraph 8 as types of auxiliary structures to the single-family residence. Paragraph 8 provides as follows:

> That no single-family residence having less than 1,400 square feet of heated floor space exclusive of garage, carport, basement, or other auxiliary structure shall be erected on the lot. Any residence having living quarters of more than one floor must contain at least 1,000 square feet of heated floor space on the principal floor and a total of not less than 1,800 square feet of heated floor space exclusive of garage, carport, basement, or other auxiliary structure.

Furthermore, we conclude the ordinary or customary meaning of "garage" in 1969, the time the restrictive covenants were executed, is sufficiently broad to include a "carport." *See Wein II*, 198 N.C. App. at 480, 683 S.E.2d at 713 ("Unless the covenants set out a specialized meaning, the language of a restrictive covenant is interpreted by using its ordinary meaning."). A dictionary with the copyright date on or about the time the restrictive covenant was executed "is an appropriate place to ascertain the then customary definitions of words and

terms." *Angel*, 108 N.C. App. at 683, 424 S.E.2d at 663 (applying a definition from the 1982 edition of The American Heritage Dictionary to determine the customary definition of the term "mobile home" as used in a restrictive covenant executed in 1981) (citation omitted). The 1967 edition of Webster's Seventh New Collegiate Dictionary defines "garage" as "a shelter . . . for automotive vehicles[.]" *Webster's Seventh New Collegiate Dictionary* 344 (1967). The same dictionary defines "carport" as "an open-sided automobile shelter usu[ally] formed by extension of a roof from the side of a building[.]" *Id.* at 128. Using these accepted definitions, and considering the language in the restrictive covenants, we conclude the developer intended for a "carport" to be a permissible type of "garage" or "shelter for automotive vehicles" under the restrictive covenants.

Additionally, although the parties dispute whether the carport is attached to Mr. and Mrs. Williams' residence, the restrictive covenants do not require that a garage be attached to the single family dwelling to be a permissible structure. Finally, we reiterate that restrictive covenants "will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of land." *J. T. Hobby & Son*, 302 N.C. at 70, 274 S.E.2d at 179 (internal citation omitted). Accordingly, we conclude that Mr. and Mrs. Williams' carport is a permissible structure under the restrictive covenants.

### iii. Carport as Part of the "Home"

Mr. Sanford also contends Mr. and Mrs. Williams' carport violates the following restriction:

> 9. All homes constructed shall be at least forty (40) feet from the front property line and ten (10) feet from either side property line. Side yard, rear yard and corner lot requirements shall conform to Section RA-12 Residential Zoning Ordinance of City of Hickory.

Specifically, Mr. Sanford contends the ten feet side setback requirement in paragraph 9 applies to the carport because "home" refers to the house and all adjacent structures, including the carport. Mr. and Mrs. Williams contend, however, that the term "home" in paragraph 9 refers only to the "dwelling place" and does not include the carport; therefore, the ten feet side setback requirement does not apply to the carport. We agree with Mr. and Mrs. Williams.

The restrictive covenants do not specifically define "home"; however, several paragraphs treat a "single family dwelling" or "residence" separately from a "garage" or "carport[.]" Paragraph 4 states

SANFORD v. WILLIAMS ·

[221 N.C. App. 107 (2012)]

that the only buildings permitted on a subdivision lot are "one detached single family dwelling" and "a private garage[.]" Paragraph 8 states in part that "no single-family residence having less than 1,400 square feet of heated floor space exclusive of garage, carport, basement, or other auxiliary structure shall be erected on the lot." Moreover, paragraph 7 specifically restricts the use of outbuildings, including a garage, and states, "No trailer, basement, tent, shack, garage, or other outbuildings erected on these residential lots shall be, at any time, used as a residence, temporarily or permanently[.]"

Additionally, in looking at the ordinary meaning of the word "home," we find the 1967 edition of Webster's Seventh New Collegiate Dictionary instructive. *See Wein II*, 198 N.C. App. at 480, 683 S.E.2d at 713; *Angel*, 108 N.C. App. at 683, 424 S.E.2d at 663. This dictionary defines "home" as "a family's place of residence[.]" *Webster's Seventh New Collegiate Dictionary* 397. Using this accepted definition, along with the language in the restrictive covenants, we conclude the developer did not intend for the term "home" to include a "garage" or any other "outbuildings" in which a person or family did not reside.

Furthermore, if the developer intended for the ten feet side setback requirement in paragraph nine to apply to the garage, carport, or other auxiliary structures, it could have clearly expressed such an intention. For example, the developer could have written that "all homes, garages, carports, or other auxiliary structures shall be at least ten feet from either side property line." Because the developer did not express such an intention, "[t]his Court may not restrict the use of the property when the restrictive covenant has failed to do so in a clear manner." *Winding Ridge Homeowners Ass'n, Inc. v. Joffe*, 184 N.C. App. 629, 641, 646 S.E.2d 801, 809 (2007) (Geer, K., dissenting), *rev'd per curiam for the reasons stated in the dissent*, 362 N.C. 225, 657 S.E.2d 356 (2008); *see J. T. Hobby & Son*, 302 N.C. at 75, 274 S.E.2d at 182 (stating that restrictive covenants must be "clearly and unambiguously drafted").

For the foregoing reasons, we conclude the ten feet side setback requirement which applies to "[a]ll homes" pursuant to paragraph 9, does not apply to a "garage" or "carport." Thus, there is no genuine issue of material fact regarding whether Mr. and Mrs. Williams' carport violated the restrictive covenants. *See Hodgin v. Brighton*, 196 N.C. App. 126, 129, 674 S.E.2d 444, 446 (2009) (holding that the language of the restrictive covenant was clear and unambiguous as to whether the side lot limits applied to a garage where the restrictions "expressly except[] attached garages from the setback restrictions

applicable to other outbuildings" and "[n]othing in the restrictions suggests that an attached garage is subject to the twenty-five feet set-back for the primary residence"). We hold the trial court did not err by granting summary judgment to Mr. and Mrs. Williams on Mr. Sanford's claim for specific performance.[2]

## IV. Defendants' Appeal

Mr. and Mrs. Williams and the City of Hickory (collectively "Defendants") contend the trial court erred by (I) failing to dismiss Mr. Sanford's request for a writ of mandamus due to a lack of subject matter jurisdiction; (II) granting Mr. Sanford's motion for summary judgment on his request for a writ of mandamus and failing to enter summary judgment against Mr. Sanford, as the moving party, and in favor of Defendants on Mr. Sanford's request for a writ of mandamus; and (III) ordering the City of Hickory to "make a decision as to the zoning matters in this case within thirty (30) days[.]"

## A. Subject Matter Jurisdiction

[2] Defendants first contend the trial court erred by failing to dismiss Mr. Sanford's request for a writ of mandamus due to a lack of subject matter jurisdiction. Defendants raised the issue of subject matter jurisdiction before the trial court at the hearing on summary judgment, but admit they "did not file a motion to dismiss for lack of subject matter jurisdiction before the hearing[.]" However, "it is well-established that an issue of subject matter jurisdiction may be raised at any stage of a case and may be raised by a court on its own motion." *Laurel Valley Watch, Inc. v. Mountain Enterprises of Wolf Ridge, LLC*, 192 N.C. App. 391, 404, 665 S.E.2d 561, 570 (2008). "Furthermore, a universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Id.* (quotation and quotation marks omitted). Thus, we will first address the issue of whether the trial court had subject matter jurisdiction over Mr. Sanford's request for a writ of mandamus.

"As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts."

---

2. Mr. Sanford also contends the trial court erred by denying his motion for summary judgment on his claim for specific performance of the restrictive covenants. We first note that the trial court did not specifically deny Mr. Sanford's motion for summary judgment; rather, the trial court entered summary judgment against him, as the moving party, and granted summary judgment in favor of Mr. and Mrs. Williams. Moreover, because we hold the trial court did not err by granting summary judgment in favor of Mr. and Mrs. Williams, we will not address this argument.

*Id.* at 403, 665 S.E.2d at 569 (quotation omitted). "If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed." *Justice for Animals, Inc. v. Robeson County*, 164 N.C. App. 366, 369, 595 S.E.2d 773, 775 (2004) (citation omitted).

"The board of adjustment is an administrative body with quasi-judicial power whose function is to review and decide appeals which arise from the decisions, orders, requirements or determinations of administrative officials, such as building inspectors and zoning administrators." *Midgette v. Pate*, 94 N.C App. 498, 502, 380 S.E.2d 572, 575 (1989) (citations omitted). North Carolina General Statutes § 160A-388(b) "confers on the board [of adjustment] appellate juris-diction to review the acts of those charged with enforcing the zoning ordinance." *Id.* at 502, 380 S.E.2d at 575 (citation omitted). Specifically, N.C. Gen. Stat. § 160A-388(b) (2011) provides that "the board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of that ordi-nance." "Once the municipal official has acted, for example by grant-ing or refusing a permit, any person aggrieved may appeal to the board of adjustment." *Midgette*, 94 N.C. App. at 502-03, 380 S.E.2d at 575 (citing N.C. Gen. Stat. § 160A-388(b)).

The ordinance at issue in this case tracks the procedures set forth in Chapter 160A. Namely, Article 2, Section 2.12.1 of the City of Hickory Land Development Code (the "Land Development Code") provides that "[t]he Board of Adjustment shall be authorized to hear and decide appeals where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative official in the administration or enforcement of the provisions of this Land Development Code."

In this case, Defendants contend that because Mr. Sanford is con-testing the issuance of the zoning and building permits, he should have first appealed to the board of adjustment to exhaust his admin-istrative remedies. Mr. Sanford contends, however, that he is not contesting the issuance of the zoning and building permits because he never contended that Mr. and Mrs. Williams could not construct a car-port. Rather, Mr. Sanford argues the issue is whether the side setback requirement has been violated, an issue the City of Hickory has not yet determined. Because we conclude the side setback requirement is an issue directly related to the issuance of the zoning permit, we agree with Defendants.

We find this case analogous to *Midgette*, 94 N.C. App. at 498, 380 S.E.2d at 572. In *Midgette*, the defendant town issued building and special use permits to the plaintiff's neighbors, the defendant property owners, for the construction of a swimming pool and bathhouse. *Id.* at 499, 380 S.E.2d at 573. After the swimming pool and bathhouse were built, plaintiff filed a complaint alleging that the pool, bathhouse, and fence enclosing them violated the town's zoning ordinances and the subdivision's protective covenants due to their distance from various right-of-ways. *Id.* at 500, 380 S.E.2d at 573-74. The plaintiff also alleged that the sale of memberships to the defendants' pool violated the zoning ordinances and protective covenants. *Id.* at 500, 380 S.E.2d at 574. Plaintiff sought, among other things, that "a writ of mandamus issue to direct the town officials to enforce the zoning ordinance[.]" *Id.* This Court distinguished the plaintiff's complaints "which arise as result of the permits which were granted to the [defendants] [from] those which would be the result of a refusal by town officials to enforce the ordinance[.]" *Id.* at 501, 380 S.E.2d at 574. Regarding the plaintiff's claims for "sale of memberships for use of the pool, the building of structures not covered by the permits, and parking[,]" this Court held that "plaintiff has stated a proper claim against the Town for mandamus . . . as there has been no decision by a zoning administrator from which she may appeal, she may not go forward under N.C.G.S. § 160A-388(b) to contest the use . . . of the pool[.]" *Id.* at 503, 380 S.E.2d at 575 (citation omitted). However, regarding the complaints that arose as result of the defendants' permits, this Court held as follows:

> Plaintiff has alleged the special damages required to assert standing under N.C.G.S. § 160A-388(b) as an aggrieved person. Thus, she could have contested the permits had she timely filed with the board of adjustment. Plaintiff's complaints specifically concerning defendants' special use, or building permits, may only be remedied by first appealing to the board of zoning adjustment. She failed to do so and therefore she cannot now attack these permits.

*Id.* (internal citations omitted).

Here, the zoning and building permits authorize the construction of a detached carport with a five foot side setback. Both of the permits and the certificate of compliance state that the carport "must be detached from home for the 5' setback." Although Mr. Sanford contends he is not challenging the issuance of the permits, he also argues that because the carport is not an accessory structure under the Land

Development Code, "it is part of the principal structure and must meet the ten feet [side] setback." We conclude that the issue of whether a five or ten foot side setback applies, and the issue of whether the carport violates the side setback, "arise as result of the permits" that were granted to Mr. and Mrs. Williams, *see id.* at 501, 380 S.E.2d at 574 (distinguishing the plaintiff's claims "which arise as result of the permits" from "those which would be the result of a refusal by town officials to enforce the ordinance"), and "specifically concern[]" Mr. and Mrs. Williams' zoning and building permits. *See id.* at 503, 380 S.E.2d at 575 (holding that the plaintiff's argument that the defendant's pool, bathhouse, and fence violated zoning ordinances due to the distance from various right-of-ways "specifically concern[ed] [the] defendants' special use, or building permits").

"Once the municipal official has acted, *for example by granting or refusing a permit,* any person aggrieved may appeal to the board of adjustment." *Id.* at 502-03, 380 S.E.2d at 575 (emphasis added) (quotation and quotation marks omitted); *see also* N.C. Gen. Stat. § 160A-388(b). Because Mr. Sanford's request for a writ of mandamus specifically concerns Mr. and Mrs. Williams' zoning and building permits, he should have timely appealed the issuance of these permits to the board of adjustment. *See Midgette,* 94 N.C. App. at 503, 380 S.E.2d at 575 ("Plaintiff's complaints specifically concerning defendants' special use, or building permits, may only be remedied by first appealing to the board of zoning adjustment. She failed to do so and therefore she cannot now attack these permits."). Mr. Sanford failed to first appeal to the board of adjustment, and therefore he cannot now attack the permits. *See id.; Laurel Valley Watch,* 192 N.C. App. at 403-04, 665 S.E.2d at 569-70 (holding that the trial court was without subject matter jurisdiction to rule on the plaintiff's claims because the plaintiff "did not exhaust its administrative remedies before seeking relief in the courts" when the plaintiff filed its case directly in the superior court, thereby "bypass[ing] the statutorily prescribed procedures for resolving zoning disputes") (citation omitted). Having failed to exhaust his administrative remedies, we conclude the trial court was without subject matter jurisdiction to rule on Mr. Sanford's request for a writ of mandamus against the City of Hickory. We, therefore, will not address Defendants' remaining argument on appeal.

In summary, we affirm the portion of the trial court's order granting summary judgment to Mr. and Mrs. Williams on Mr. Sanford's claim for specific performance. Additionally, we vacate the portions of the trial court's order granting Mr. Sanford's motion for summary

judgment on his request for a writ of mandamus and ordering the City of Hickory to "make a decision as to the zoning matters in this case within thirty (30) days[.]"

AFFIRMED in part; VACATED in part.

Judges HUNTER and McCULLOUGH concur.